# LYNDON MILL COMPANY *v*. THE LYNDON LITERARY AND BIBLICAL INSTITUTION.

*Corporation.  Authority of president.  Implied contract to pay for goods received.  Ratification.  Estoppel.  Evidence.*

1. In the absence of some delegation of authority, express or implied, the president can no more bind a corporation than any other individual trustee.
2. The authority of a president to bind his corporation will not be presumed, but must be found as a fact by the trier of fact.
3. The law does not imply a promise to pay for goods from the mere fact of their being received and used, if the one receiving them understands at the time that they are not to be paid for.
4. If the president of a corporation orders materials for the use of his corporation upon the understanding with the other trustees that he is to furnish them as a gratuity, the fact that the corporation receives and uses them will not of itself make it liable for the price.
5. Nor will the fact that the president is also an officer in the corporation furnishing the materials, and knows that they are being charged to the defendant, affect its liability. His knowledge under those circumstances is not to be imputed to the defendant.
6. The claim in suit was sold to a third party, who called upon the then president and treasurer of the defendant to pay it. This they declined to do for want of funds, but did not question the validity of the debt. *Held*, that their failure to repudiate the claim did not amount to a ratification which would bind the company, it not appearing that they had authority thereto.
7. Nor is the defendant estopped by its failure to disaffirm the contract, for it does not appear that a majority of the trustees had notice of the pretended contract until after the commencement of this suit, and there was no occasion to disaffirm it.
8. Evidence of the arrangement between the president and his co-trustees by which he was to furnish the materials sued for as a gratuity was admissible, as showing that he had no authority to bind the defendant in that respect.

Lyndon Mill Company *v.* The Lyndon Institution.

General assumpsit. Trial by court at the December term, 1890, Tyler, J., presiding. Judgment for the plaintiff. The defendant excepts.

The findings of fact by the court were as follows:

"The plaintiff and defendant were corporations located at Lyndonville. Books of record were put into the case showing the charters, by-laws and elections of officers in each corporation, and transcripts from the pages referred to in evidence are made part hereof. The pages referred to will show that certain persons were at the same time officers in both corporations. Hall, Harris, Thompson and Vail were, when the lumber described in the specification was delivered to the defendant, trustees of the defendant, and Hall and Thompson were directors and quarter owners, each, in the plaintiff corporation. The four trustees named desired to repair and improve the Institute buildings, and shortly before the lumber was delivered they made a personal and private arrangement among themselves by which Vail and Harris were to put a heating apparatus into the building, Thompson was to furnish labor and make certain repairs thereon, and Hall was to furnish the lumber for the repairs. All this was to be done as a gratuity. Vail, Harris and Thompson fulfilled their part of this arrangement at an expense to themselves of several thousand dollars. The lumber in question was the plaintiff's property and was received and used by the defendant in repairing and improving its Institute buildings and for no other purpose.

The lumber was delivered to the defendant by said Hall, who was at the time of the delivery president of the defendant and chairman of its executive committee. Harris was then one of the defendant's trustees, its financial agent, and directed the use of the lumber as a member of the committee to superintend the repairs.

As the lumber was delivered it was charged to the defendant on the books of the plaintiff by its bookkeeper, but by whose directions it was charged it does not appear.

Hall was at the buildings frequently while they were being repaired, and ordered the lumber delivered as he learned from Harris from time to time, that it was required. Harris and Vail supposed it was delivered by Hall pursuant to the arrangement aforesaid.

Hall and Thompson both died before the suit was brought. It did not appear how Hall understood the lumber was being furnished or how he intended to furnish it, if he intended to carry

Lyndon Mill Company *v*. The Lyndon Institution.

out his part of the arrangement, otherwise than by the charges made by it on the plaintiff's books.

It did not appear that said arrangement made by Hall, Thompson, Harris and Vail, was known to any of the other officers of the defendant. It was never acted upon or brought to the knowledge of the defendant as a corporation, nor did it appear that the arrangement was known to the officers or stockholders of the plaintiff except Hall and Thompson.

There was no evidence of an express promise by the defendant to pay for the lumber other than as above stated.

The evidence as to said arrangement entered into by Hall, Thompson, Harris and Vail, was received subject to the plaintiff's objection and exception.

There was no evidence that Hall ever promised the plaintiff that he would pay for the lumber, or that he ever assumed payment of it to the plaintiff.

The plaintiff offered evidence tending to show that after the lumber was delivered and before the suit was brought, while said Hall was president, trustee and chairman of executive committee of defendant, and also a director of plaintiff, at a meeting of plaintiff's officers, when some of plaintiff's assets were being discussed, Hall said this lumber bill was justly due from the defendant and would be paid by it. The evidence was objected to by defendant, but received by the court subject to the defendant's exceptions. In deciding the case the court excluded this evidence from its consideration and so announced to counsel when it rendered the judgment. To the refusal of the court to consider the evidence the plaintiff excepted.

We find from the testimony of Geo. Ide, who is the owner of this demand and in whose behalf this suit was brought, that he had a conversation with L. B. Harris while the latter was president of defendant corporation, about the bill, in which he told Harris that he wished to collect it as it would soon outlaw; that he did not wish to sue it, as the trustees were all his friends; that he supposed they would not pay it if it outlawed, and that Harris replied that they would not, and proposed that he would personally make a small payment to save it from the statute of frauds. He had no authority from the trustees to make any payment. He said the defendant had no funds with which to pay the account. He never made a payment on the account and this suit was brought. Mr. Ide at other times spoke to the treasurer of the defendant, Mr. Sanborn, and to its president, Mr. Thompson, about the account, and on such occasions they would only say that the defendant had no funds to pay it with."

Lyndon Mill Company *v.* The Lyndon Institution.

*Geo. W. Cahoon* and *W. P. Stafford*, for the defendant.

The defendant supposed this lumber was a gift. Therefore there was no implied promise to pay for it. *Durrill* v. *Lawrence*, 10 Vt. 517. Evidence of the arrangement between Hall, Harris, Thompson and Vail was properly received, although Hall and Thompson had deceased. It precluded the idea that the defendant intended to pay for the lumber. *Canfield* v. *Bentley's Estate*, 60 Vt. 655.

*J. T. Gleason* and *Bates & May*, for the plaintiff.

Hall was president of the defendant and the presumption is that he had authority to bind the defendant for the price of this lumber. *R. R.* v. *Gree*, 15 N. Y. 469.

By its neglect to repudiate this debt when payment was repeatedly requested the defendant has ratified the act of its agent Hall. Busw. Limit. § 70; *Mid. College* v. *Williamson*, 1 Vt. 212; *Bank* v. *Fasset*, 42 Vt. 432; *Smith* v. *Pinney*, 32 Vt. 282; *Bank* v. *Sprague*, 43 Vt. 502; *Bank* v. *Curtis*, 24 Me. 36; *Kelsey* v. *Bank*, 69 Penn. St. 426; Moraw. Cor. Sec. 633; Angell Cor. Sec. 304; *Noyes* v. *R. R. Co.*, 27 Vt. 110; *Forsythe* v. *Day*, 46 Me. 176.

The defendant is estopped by its silent acquiescence. Moraw. Cor. Sec. 630, 631; *Sherman* v. *Fitch*, 98 Mass. 59; *Glass Co.* v. *Glass Co.*, 111 Mass. 315; *Pitts* v. *Shubert*, 11 La. 286, S. C. 30 Am. Dec. 718.

The opinion of the court was delivered by

START, J. The defendant did not take any corporate action with a view to repairing its buildings, and its trustees did not undertake to make the repairs upon the credit of the defendant. Hall, Harris, Thompson and Vail were the defendant's trustees; but whether they were a majority of the defendant's trustees does not appear. These four trustees desired to repair

the defendant's buildings; and, shortly before the lumber in question was delivered, they made a personal and private arrangement among themselves, by which Harris and Vail were to put a heating apparatus into the buildings, Thompson was to furnish labor and make certain repairs thereon, and Hall was to furnish the lumber for such repairs. All this was to be done as a gratuity. The lumber was delivered by Hall, who was then president of the defendant's board of trustees and a director of the plaintiff corporation. The lumber, prior to its delivery to Hall, was the property of the plaintiff and was charged to the defendant as it was delivered; but by whose direction the charge was so made does not appear.

1. The defendant's trustees did not authorize Hall to procure the lumber upon the credit of the defendant; on the contrary, it was understood and agreed that Hall should furnish the lumber as a gratuity. It does not appear that Hall ever undertook to pledge the credit of the defendant in procuring the lumber, except by inference from the fact that the lumber was charged to the defendant. If Hall did direct the plaintiff to charge the lumber to the defendant, such direction was without authority, and the defendant is not liable by reason of a purchase by its authority.

Hall had no authority, by virtue of his office of president, to purchase the lumber upon the defendant's credit. He could preside at the meetings of the board of trustees; beyond this he had no more authority than a single trustee. A single trustee or director has no power to act for the institution which creates his office, except in conjunction with others. It is the board of trustees or directors only that can act. If the board of trustees or directors makes a president, trustee, or any other person, its officer or agent to act for it, then such officer or agent has the same power to act, within the authority delegated to him, as the board itself. His authority is, in such case, the authority of the board. It not appearing that Hall was authorized by a majority

of the defendant's trustees to purchase the lumber in question upon the credit of the defendant, the case must be disposed of upon the assumption that he had no such express authority. *Fairfield Savings Bank* v. *Chase*, 72 Me. 226; Cook's Stock, Stockholders and Corporation Law, ss. 712 and 716; *Ashuelot Manufacturing Co.* v. *Marsh*, 1 Cush. 507.

It is claimed that authority in Hall, as president of the defendant corporation, will be presumed. The weight of authority is against this claim, and surely no such presumption can exist when, as in this case, want of authority clearly appears. If Hall had express authority to purchase the lumber upon the credit of the defendant, or general authority to act for the board of trustees, or had exercised the powers conferred upon the trustees, with their knowledge and acquiescence, to such an extent as to justify the presumption that such authority had been delegated to him, then the court below should have found such authority; there is nothing before this court from which Hall's authority can be presumed.

It not appearing that Hall, Harris, Thompson and Vail were a majority of the defendant's trustees, authority to repair the defendant's buildings is not shown. From aught that appears in this case, the repairs were made without the knowledge or consent of a majority of the defendant's trustees, or the knowledge or consent of any one authorized to act for them, or for the corporation. Hall, Harris, Thompson and Vail, in undertaking to make these repairs, did not profess to act for, or to bind the defendant. They were volunteers undertaking to do what, presumably, the defendant could not do for want of funds. If under such circumstances corporations are to be held liable, then every corporation holds its property by a very uncertain and insecure tenure.

2. The plaintiff claims the defendant is liable by reason of its having received and used the lumber. It is true that the law usually implies a promise to pay for property transferred from

Lyndon Mill Company *v.* The Lyndon Institution.

one party to another, but this rule does not apply when there is an express contract, nor where it is understood by the parties that the property is not to be paid for. *King* v. *Woodruff*, 23 Conn. 56 (60 Am. Dec. 625); *Wait* v. *Merrill*, 4 Me. 102 (16 Am. Dec. 338); *Weir* v. *Weir's Admr.*, 3 B. Mon. 645, (39 Am. Dec. 487); *Walker* v. *Brown*, 28 Ill. 378 (81 Am. Dec. 287). If there was a contract with the defendant, it was the arrangement made among the four trustees, by which Hall was to furnish the lumber as a gratuity, and the lumber was delivered to the defendant by the party agreeing to so furnish it. The defendant's officers had a right to treat the lumber as delivered pursuant to this agreement. There was nothing to put them upon inquiry, or to lead them to believe the lumber was being otherwise delivered, and it appears from the findings of fact that Harris and Vail supposed the lumber was so delivered. It does not appear what understanding Hall and Thompson had regarding this, but nothing is shown that would justify a different understanding on their part. And it does not appear that any of the defendant's trustees knew, at the time the lumber was received and used, that it was charged to the defendant. Under these circumstances, the law will not imply a promise to pay.

It is claimed that it may be fairly inferable that Hall knew the lumber was charged to the defendant, and that his knowledge is imputable to the defendant, and, by reason of this, it is to be assumed that the defendant received and used the lumber knowing it had been procured upon its credit. Hall having no authority to bind the defendant by express contract, his acquiescence would not make the defendant liable. He could not by his silence bind the defendants when he could not do so by express contract. Hall was an officer in both corporations. When an agent of a corporation is also an agent of another corporation, and there are mutual dealings between the corporations through the intervention of such agent, the question of whether either corporation is to be charged with notice of what is known to the agent by virtue

of his relation to the other corporation, depends upon the circumstances of each case. *Innerarity* v. *Merchants National Bank*, 139 Mass. 332 (52 Am. Rep. 710); *Fairfield Savings Bank* v. *Chase, supra.* In view of Hall's undertaking to furnish this lumber as a gratuity, and his interest to conceal from the defendant the fact that he had, without authority, procured the lumber upon the defendant's credit, we hold that Hall's knowledge is not imputable to the defendant, and that there is no presumption that the defendant knew at the time it received and used the lumber, that it was procured upon its credit.

3. It appears that the demand in this suit was sold to George Ide; that he called upon Harris, who was then president of the defendant corporation, for payment; that Harris, without authority from the trustees, proposed to personally make a small payment, and said the defendant had no funds with which to pay the demand. Ide at other times called upon the president and treasurer for payment, and was told the defendant had no funds with which to pay. It was claimed these officers, by failing to deny the liability of the defendant on these occasions, have ratified Hall's acts, and that the defendant is bound by this ratification. A ratification of an act done by one assuming to be an agent relates back, and is equivalent to, a prior authority. When, therefore, the approval of a majority of a board of trustees is necessary to confer authority in the first instance, there can be no valid ratification except in the same manner. It not appearing that the president and treasurer were a majority of the defendant's trustees, or that authority to bind the defendant by contract had been conferred upon them by the trustees or corporation, they could not affirm an unauthorized contract made by Hall. *Despatch Line of Packets* v. *Bellamy Manufacturing Co.*, 12 N. H. 205; Story on Agency, ss. 235 and 239.

4. It is claimed that the defendant is estopped from denying its liability, by reason of its failure to disaffirm the contract c aimed to have been made by Hall. This claim is not sustained

by the facts. The essential elements of an estoppel are not found by the court below. The defendant was not called upon to disaffirm the pretended contract until it had knowledge that such contract had been made. *Saville* v. *Welch*, 58 Vt. 683. It does not appear that the defendant, or a majority of its trustees, had such knowledge prior to the bringing of this suit; nor does it appear that the plaintiff has been influenced, misled or damaged by the acts of any one authorized to act for the defendant. *Boynton* v. *Braley*, 54 Vt. 92; *Earl* v. *Stevens*, 57 Vt. 474; *Wooley* v. *Edson et al.*, 35 Vt. 214.

5. The plaintiff claimed it had sold and delivered the lumber in question to the defendant, through the defendant's agent, Hall. The defendant claimed Hall was not its agent for that purpose, and that it did not purchase or receive the lumber from the plaintiff, but from Hall as a gratuity. The plaintiff claimed payment for the lumber so delivered by Hall. In view of these claims, the defendant had a right to show from whom, and under what contract or arrangement, it received the lumber; and, for this purpose, the evidence showing the arrangement between Hall, Harris, Thompson and Vail was properly admitted. It had a direct tendency to show that Hall had no authority to procure the lumber upon the defendant's credit; and that the defendant received the lumber from a party other than the plaintiff, under such circumstances as would preclude a recovery for the same by the plaintiff. *Aiken* v. *Kennison*, 58 Vt. 665; *Armstrong* v. *Noble*, 55 Vt. 428.

*Judgment reversed, and judgment for the defendant and trustee to recover their costs.*