(Judge Burrows, of the seventh circuit, sitting in place of Judge Hale.)

EAST CLEVELAND RAILROAD CO. v. SYLVESTER T. EVERETT.

1. BOARD OF DIRECTORS—GOVERNING BODY OF A CORPORATION.

The board of directors is the governing body of a corporation, and in the absence of any action conferring power upon others, is solely authorized to market the authorized bonds of the company.

2. PRESIDENT'S CONTRACT FOR SALE OF BONDS INVALID.

A broker employed by the president of a corporation to negotiate the sale of its bonds, cannot recover commission or compensation therefor unless it appears that his employment was authorized by the board of directors or was brought to the knowledge of and ratified by such board. East Cleveland Railroad Co. v. Everett, 8 Circ. Dec., 210, overruled.

3. AUTHORITY TO ACT AS SUPERINTENDENT AND GENERAL MANAGER—EFFECT.

The fact that the president of a corporation has been authorized to act as superintendent and general manager of a corporation in the conduct of its ordinary routine business, does not so enlarge his powers that he can, of his own motion, inaugurate and carry forward an enterprise for bonding or selling the bonds of the company.

4. KNOWLEDGE OF DIRECTORS OF ULTRA VIRES CONTRACT.

The fact that two of the directors of a corporation knew that a stockholder had been employed by the president to negotiate a sale of the company's bonds, and that they were present when the bonds were delivered to the broker, does not amount to a ratification of such contract.

5. CONSTRUCTION OF AMBIGUOUS RESOLUTIONS.

Where the resolutions of the board of directors of a corporation are ambiguous and uncertain, they should be construed according to the general purpose. Thus, where one resolution would, standing alone, appear to authorize a sale of bonds by the president, and all others relating to the same subject matter confer duties purely ministerial, the resolution in question cannot be considered independently or as conferring authority inconsistent with the general purpose.

6. SCOPE OF CONTRACT FOR PURPOSES OF INQUIRY.

A writing entered into by the president of a corporation with a broker purporting to be a contract authorizing a sale of bonds, but which clearly appears to have been authorized for the sole purpose of ascertaining, through inquiry in bond markets, what the bonds of the corporation could be sold for, must be restricted in force and effect to the purpose for which it was made.

7. FULL LATITUDE IN CROSS-EXAMINATION OF OPINION WITNESSES.

Full latitude should be allowed in the cross-examination of opinion witnesses, not only as to matters peculiarly within their sphere but also as to matters of common knowledge, to ascertain the basis and the soundness of their opinions.

8. SCOPE OF INQUIRY AS TO REASONABLE WORTH OF SERVICES.

Where the contract for the sale of bonds provides that the broker shall be paid what his services are reasonably worth, the customary compensation for such services is not the only criterion of value. The difficulty of the task, the skill required, the time consumed and the value of results achieved are all material and important facts.

9. EXPERT TESTIMONY AS TO REASONABLE WORTH.

Where bonds are sold under an agreement that the broker shall receive what his services are reasonably worth, brokers and others having superior knowledge as to the nature and character of the business, and compensation usually paid therefor, are competent witnesses.

10. CUSTOMARY COMMISSIONS—CROSS-EXAMINATION OF EXPERTS.

The question as to the amount of compensation to be paid for the sale of bonds, under an agreement, express or implied, that the broker shall receive customary commission, may be determined by evidence showing what such customary commissions were at the time and place of contract and sale. And in such case it might be proper to restrict the cross-examination to that fact.

11. MATTER AFFECTING WEIGHT OF EXPERT TESTIMONY.

A broker having testified as to the value of services in the sale of bonds, under an arrangement whereby the agent had entire charge, does not disqualify such testimony by being unable to determine intelligently what such services would be worth under a special agency or for a sale of a portion of the bonds of a corporation. His inability in this respect goes to the weight rather than the competency of his testimony.

12. COURT SHOULD NOT GIVE PROMINENCE TO PARTICULAR FACTS

Requests to charge propositions which recite specific items of evidence favorable to either side, but which involve no rules of law, are improper; it is sufficient for the court to direct the jury to consider all the evidence without giving special prominence to any particular circumstances.

13. MIS-STATEMENT IN HYPOTHETICAL QUESTION.

A mis-statement by mere inadvertence, in a hypothetical question, assuming a condition not existing, but which is subsequently explained and corrected, does not constitute prejudicial error.

ERROR to the Common Pleas Court of Cuyahoga County.

BURROWS, J.

The questions presented in this case relate solely to the issues made upon the cross-petition of the defendant below, who is the defendant in error in this court, and the reply of the plaintiff thereto.

By his cross-petition the defendant alleges, in substance, that the East Cleveland Railroad Company is indebted to him in the sum of $25,000, for services rendered the company in and about the business of marketing and selling its mortgage bonds; and that said services were performed at the request of the company and under a contract duly authorized by it.

While the plaintiff, by its reply, denies all facts stated in the cross-petition, the real defense, as developed on the trial, was that whatever services the defendant rendered, were rendered gratuitously as stockholder of the company; or, if not so rendered, that his employment was not authorized by the company and that, therefore, it was under no legal obligation to pay for said services. The trial resulted in a judgment for the defendant, which the plaintiff now seeks by these proceedings to reverse.

The questions most strenuously contested in the case were whether the president of the company had, in any manner, been authorized by its board of directors to employ the defendant; and if not, whether the president, without such authorization, could bind the company.

The plaintiff requested the court to charge in this behalf the following propositions:

" No. 1. The board of directors is the governing body of the company, and if the defendant rendered services in and to the sale of such bonds unauthorized by the board, he is not entitled to any compensation therefor, unless he shows that such services were made known to the board and by it ratified.

" No. 11. To entitle the defendant to any compensation for any services rendered by him in procuring the sale of any portion of said bonds, he must show that his employment was by direction of the board of directors, or that it was made known to or was sanctioned by it.

" No. 39. The board of directors is the governing body of the company, and in the absence of any action conferring the power upon another or others, was solely authorized to market the $1,000,000 issue of bonds; and if the jury find that such board never employed the defendant to negotiate the bonds, and never authorized his employment, he can not recover for any services rendered in connection therewith, unless such employment was brought to the knowledge of the board and was by it ratified."

The court refused to give these propositions of law or any of them, and charged the jury as follows:

" I say to you, gentlemen, that Mr. Everett, as president of the company, exercising the functions of the chief executive of the company in the ordinary course of its business, was authorized, without express authority from the board of directors, to employ an agency, such as the defendant claims he subsequently served in this case, to obtain the information which he claims that he did obtain with reference to these bonds, and the services which he claims he rendered in and about the sale of the same."

This ruling and direction of the court rendered immaterial a large part of the evidence submitted to the jury, and left to them substantially only the question of the value of the defendant's services.

By reason of its importance we have given this question as careful consideration as possible, and are unanimous in the opinion that the charge of the court was erroneous; and that the proposition of law presented in the requests should have been given.

These three requests embodied substantially the same proposition, but the thirty-ninth request is a clear, accurate, and properly guarded statement of the law.

Council for defendant contend that by this charge the court does not declare that such power is possessed by the president by virtue of his office, but only " as president exercising the functions of chief executive of the company in the ordinary course of its business."

We are unable to put that construction upon the charge, but if we were, we should still be compelled to hold that it was erroneous. Had the president been authorized to act as superintendent or general manager of the company in the conduct of its ordinary and routine business, his powers would not thereby have been enlarged, so that he could legally, of his own motion, inaugurate and carry forward an enterprise for bonding the property of the company.

It is also urged that the judgment should not be reversed, for the reason that the charge was not prejudicial; that it is an admitted fact in the case that the defendant performed the services in question under employment by the president, and that this fact was known to two other members of the board of directors; and that, in law, notice to these officers was notice to the company; and that, by reason of the notice to the company, it was bound to pay for the services.

A large number of authorities are cited, which hold that notice to an officer or agent in respect to a matter within the scope of his duties, while in the discharge of the same, is notice to the corporation. We are not disposed to question the correctness of this law, but are unable to concede its applicability to this case.

The decision of the question under consideration hinges upon the) power of the president of this corporation to make the contract in ques-) tion. If he did not possess that power by virtue of his office, it could only be conferred upon him by the board of directors or a majority of them, acting in their official capacity. Certainly, notice to less than a majority of the board could not be construed into a delegation of power or a sanction or ratification of an unauthorized exercise of it by the president.

The doctrine contended for by counsel for defendent, logically and practically carried out, would render all unauthorized acts of an officer of a corporation valid and binding, as in every such case the officer would necessarily have full notice of the fact that he was doing the unauthorized act.

The delegation of power to the president by notice would seem to be in conflict with certain statutory enactments.

Section 3256, Rev. Stat., gives to the corporation, and to the corporation alone, the power to borrow money and mortgage its property; while sec. 3248, Rev. Stat., provides that "the corporate powers, business, and property of corporations formed under this title must be exercised, conducted, and controlled by the board of directors."

We are aware that the charge of the learned judge, which we are unable to approve, was made in deference to certain intimations contained in the opinion of this court in East Cleveland R. R. Co. v. Everett, 8 Circ. Dec., 210.

It is not necessary for us to harmonize or explain the discrepancy between our present and former holding. It is sufficient to say that neither this court, nor any court, for that matter, sets up a claim to infallibility. It is proper, however, to mention the fact that this question was not then properly before this court for consideration or decision, and was not examined or authoritatively determined by the court. It further appears that the intimations therein made as to the power of the president of a corporation did not receive the sanction of the entire court. But were it otherwise, and had such decision been authoritatively made by the unanimous opinion of the court, we should feel compelled to overrule such decision, as being in direct conflict with the great weight of authority. 4 Thompson on Corporations, sec. 660; Jones on Railroad Securities, sec. 84; 63 Vt., 581; Beach on Private Corporations, secs. 202 and 207; 1 Waterman on Corporations, 448; 146 U. S., 106; 162 U. S., 346; 111 Mass., 75; 2 Cook on Stock and Stockholders, sec. 716; 37 N. J. Law, 96; 46 N. J. Law, 240; 102 Pa. Stat., 269; 109 N. Y., 512.

Railroad Co. v. Everett.

In respect to the construction and meaning to be given to the resolution of the board of directors, passed on March 12, 1892, the plaintiff asked the court to give the following instructions:

"No. 36. The resolution of the board of directors of March 12, 1892, purporting to authorize the president and secretary of the plaintiff to dispose of the bonds, did not authorize them or either of them to employ the defendant to make such disposition or sale, and if such appointment had in fact been made by the president and secretary of the company, such employment was wholly unauthorized, and therefore not binding on the plaintiff."

In our opinion, this request was good law and was applicable to the case, and should have been given.

From a consideration of the entire action of the board of directors in respect to the sale of these bonds, we are forced to the conclusion that by a proper construction of the resolution referred to in this request, the president and secretary were not thereby authorized to sell the bonds of the company, or any part thereof, and therefore could not delegate such authority.

At the annual meeting of the stockholders of the corporation on January 12, 1892, express authority was given to the board of directors, by resolution, to make and issue the bonds and execute the mortgage in the form and manner specified in such resolution.

At a directors' meeting held March 12, 1892, the executive committee reported that the Society for Savings offered to take $250,000 of the bonds at 98 cents on the dollar. Thereafter, and at the same meeting, the following resolution was adopted:

"Resolved. That the executive committee are hereby authorized to sell any or all of said bonds at a price of not less than 98 cents on the dollar."

And thereupon, at the same meeting, a resolution was passed, by which authority was expressly conferred upon the president and secretary to make, execute and deliver the bonds, so sold by the executive committee, to the purchasers of the same; and then, further on in this same resolution, we find this clause:

"And that said president and secretary are further authorized to dispose of said bonds and use the proceeds realized therefrom for the purposes of cancelling the existing mortgage of this company," etc.

While the phrase, "to dispose of," is ambiguous, and its meaning in any particular case is to be determined by the subject matter in respect to which it is used, it is quite evident that if we disregard the purpose had in view by the board in framing this resolution, its proper meaning would be, "to dispose of them by sale." We can not, however, ignore the fact that the board of directors, after entering upon the records of the company its approval of the action of the executive committee in negotiating under its special authority and direction $250,000 of these bonds, in plain and unequivocal language gave to the executive committee full authority to sell all the bonds that remained undisposed of at a price not less than 98 cents on a dollar.

The further fact is to be noted that all the duties required of the president and secretary by this resolution were purely ministerial and such as distinctly appertained to their offices respectively, except this alleged authority to them to sell these bonds. If the authority to the president and secretary "to dispose of the bonds" is held to refer to

their delivery of the same to purchasers as thereinbefore specified, then the whole proceedings of the board at this meeting are rendered consistent.

It was, as we think, the evident purpose of the board, after having provided for the sale and delivery of the bonds, to provide thereafter in this resolution solely for the receipt and disbursement of the purchase money; and not to make at the same meeting a further and different provision for their sale or delivery.

Our holding upon this question, however may not have much practical bearing upon the rights of the parties, as it can not reasonably be claimed from this record that the president and secretary ever made or assumed to make any sale of these bonds in pursuance of any authority derived from this resolution. On the contrary, at a meeting of the board on March 22, 1892, the president, who was a member of the executive committee, reported that the entire issue of bonds had been sold at 98 per cent. and thereupon this resolution was adopted: "Resolved, That the action of the executive committee in disposing of the bonds is hereby approved."

In the progress of the trial, the contracts of February 15 and March 2, 1892, between the defendant and the railroad company were given in evidence, whereby the East Cleveland Railroad Company, for the consideration of one dollar, authorizes and directs Sylvester T. Everett to sell at 95 cents $1,000,000 of the first mortgage bonds of the company thereafter to be issued. By the testimony of Dr. Everett and the defendant as well, it clearly appears that these so called contracts did not embody or represent any real agreement whatever between the parties, but were executed for the sole pupose of being used, if necessary, by the defendant, to enable him to ascertain the best prices that could probably be obtained for bonds in the eastern market, and also what form of bonds would best meet the approval of purchasers. The plaintiff asked the court to give the following request:

"No. 12. If the jury find that the only purpose of the contract or paper of March 2, 1892, within the understanding of Dr. Everett and the defendant, was to enable the defendant to show the authority of the defendant from the company, to inquire and through inquiry to ascertain what the bonds of the company could be sold for, it conferred no authority on the defendant to sell the bonds of the company."

This request was good law and its refusal error.

If the company authorized the making of this document solely for the purposes stated in the request, as between the parties to it, neither of them could thereafter claim for it any force and effect contrary to the intent and purposes for which it was made.

Several brokers were called by the defendant to give their opinion as to the value of the defendant's services. These witnesses testified as experts having experience in, and knowledge of, the business of selling bonds and the compensation or commissions usually paid therefor. The expert witness, Harry E. Hayes, gave his opinion in reponse to a hypothetical question, in which the facts as claimed by the defendant in respect to the services he had performed were fully stated. Upon cross-examination, he said he had never known of a transaction where a considerable part of the bonds had been sold by the corporation itself, and an agent had then been employed by it to assist in disposing of the balance; and that he did not think he could give an opinion as to the value of such service. And thereupon, at the conclusion of his testimony

the plaintiff moved the court to withdraw from the jury the answer of this witness as to the value of the defendant's services, given in response to the defendant's hypothetical question.

We think this motion was properly overruled.

Where bonds are sold under an express or implied agreement that the agent or broker shall receive the customary commissions, the question of amount of compensation is to be determined by showing what such customary commissions are, at the time and place of the contract; and any one possessed, by reason of his business or otherwise, of that knowledge, may testify as to the same. But where bonds are sold or labor has been bestowed by an agent in effecting their sale, under an express or implied agreement that he shall be paid what his services are reasonably worth, brokers and others having superior knowledge as to the nature and character of such business, and the compensation usually paid therefor, may give their opinion as to the value of the services rendered. Such opinions are allowed to be given as matter of necessity, and are in strict conformity with the rule that a party must present the best evidence attainable; for if such evidence is not admissible, it is difficult to see how any evidence could be given upon the subject.

That such expert witness gives an opinion on one assumed statement of facts, and is not able to give an opinion upon another and different assumed statement of facts; or that he is unable to discriminate intelligently between what should be paid an agent who is a broker, taking entire charge of the business and whose commissions are fixed by custom and depend upon his success, and the compensation that should be paid an agent who is not a broker and has no special agencies or facilities at his command for the transaction of the business and whose compensation is not dependent upon results, does not render his opinion inadmissible. These things go to the weight and not to the competency of his testimony.

In a hypothetical question put to Witness W. H. Lamprecht, it was assumed, contrary to the fact, that the defendant sold $300,000 of these bonds in Philadelphia before any had been sold in Cleveland. There was a general objection to this question, which was overruled.

It is contended that this ruling was erroneous, for the reason that the question assumed the existence of a material fact which it is conceded did not exist. We are not able to see that the plaintiff was prejudiced by this misstatement of fact in the hypothetical question. It was apparently a mere inadvertence, and was explained and corrected by the cross-examination.

Numerous exceptions were taken to the refusal of the court to permit answers to be given to questions propounded to these expert witnesses on cross-examination; such as whether this or that supposed circumstance would modify their opinion as given in chief. They were inquired of, for example, whether, in their opinion, the compensation of the defendant would be of the same value whether in doing certain things he devoted to the business thirty minutes or several days; or whether his services were equally valuable whether the sale of these bonds required the exercise of great labor and skill or little labor and skill.

Questions were also held incompetent on cross-examination of these opinion witnesses, which required them to estimate the value of the services of the defendant upon the supposition that it was not by his skill or influence, but mainly by the action and influence of the directors of

the company, that these bonds were taken by banks at 98 cents on the dollar.

The restriction of the cross-examination, made by the court, might have been proper had the contract of employment of the defendant been made upon the express or implied condition that he was to receive as compensation for his services the customary commissions charged and paid therefor. But he was not claiming compensation for services rendered under such contract, but was claiming compensation under a contract that provided that he should be paid for his services what they were reasonably worth. To determine their reasonable worth, what was usually paid for similar services was not the only criterion of their value. The difficulty of the task, the skill required for its performance, the time devoted to its accomplishment and the value of the results achieved by his efforts were all material and important facts to be considered by the jury in their determination of what his services were reasonably worth.

It is claimed by counsel for defendant that as to many if not all questions where answers were not permitted on cross-examination of these witnesses, it was evident what answers must have been given, and that the questions only called for statements of facts within the common knowledge of all.

Full latitude should be allowed in the cross-examination of opinion witnesses, in order to ascertain the basis and test the soundness of their opinions; and their answers in respect to matters of common knowledge may be of such character as to demonstrate the absurdity of their opinion, and the unsoundness of their judgment.

We are of opinion that the court erred in restricting the cross-examination of the expert witnesses in respect to the matters herein indicated.

Counsel for plaintiff contend that the court erred in refusing to charge divers propositions in which specific items of evidence favorable to the plaintiff are recited, with the request that the court should instruct the jury that such evidence should be taken into consideration in their determination of their verdict.

The court did charge the jury to consider all the facts and circumstances of the case as shown by the evidence, and refused to give special prominence to particular circumstances as requested by plaintiff.

This action of the court was, in our opinion, correct. In no instance was there any rule of law involved in these requests, and no reason is apparent why the attention of the jury should have been called specifically to these matters.

Several other questions are presented by this record, which we pass with the remark that none of them, in our opinion, are of sufficient importance to affect the judgment.

There remains the question whether the verdict is supported by sufficient evidence.

The record shows abundantly that the defendant rendered valuable services that were beneficial to the plaintiff, and at the request of its president. Any moral obligation that might rest upon the company under these circumstances to compensate the defendant, courts are powerless to enforce. It is evident that there is not sufficient evidence in this record to support the verdict, when its legal force and effect is tested, measured and estimated by the rules of law which we hold are applicable to the case.

By the clear weight of the evidence, the defendant was not employed by the East Cleveland Railroad Company, nor was his employment sanctioned or ratified by it.

The motion of the plaintiff to set aside the verdict and grant a new trial, on the ground that the verdict was contrary to the evidence, should have been granted, and the refusal of the court to grant the same was error.

The judgment of the court of common pleas is reversed for the several errors specified in this opinion; and this cause is remanded to that court for further proceedings according to law.

*Boynton & Horr*, for plaintiff in error.

*Dickey, Brewer & McGowan*, and *Wood & Meals*, for defendant in error.