HOWLAND BROTHERS & CAVE *v.* BARRE SAVINGS BANK & TRUST COMPANY AND GREEN MOUNTAIN ELECTRIC COMPANY.

November Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed October 11, 1915.

*Appeal in Chancery—Findings of Fact—Conclusiveness—Authority of Officers—Apparent Authority—Secret Limitations—By-laws—Equitable Assignment—Consideration—Forbearance of suit.*

The findings by a chancellor on question of fact are conclusive on appeal to this Court, which sits only as a court of error in such cases; but, where a finding is really an erroneous conclusion of law, it will be rectified on appeal.

On interpleader between a bank and the assignee for creditors of an electric company to determine the right to a fund, it appeared that the electric company wanted to borrow money from the bank to buy an electric business, but was told by the bank that it could not accept the company's notes, whereupon the company by resolution· authorized its president to give his personal notes to the

bank, to be indorsed by the company, the avails of which were to be used for the purchase of said business for the company, the company to issue its paid-up stock to him, redeemable *pro tanto* upon payment by the company of the notes as they became due; that the stock was accordingly issued to the president, who executed three notes to the bank and assigned the stock to it as security, the company's treasurer and general manager agreeing with the bank that the notes would be paid "at the rate of $1,000 per year from the proceeds of the business of the company;" that later the company equipped a building belonging to the cashier of the bank and others; that when the company asked the cashier for a partial payment on the contract he told it that the bank intended to sue on the notes and trustee himself and associates as creditors of the company, whereupon the company's treasurer and general manager agreed with the cashier of the bank that, in consideration that the bank forebear suit, part of the amount owing on the contract should be withheld, and applied when due to the payment of the notes held by the bank, and the bank accordingly forebore suit, and the money was withheld and constituted the fund in question. *Held*, that the agreement of the treasurer and general manager that the company would pay the notes was binding on it, since the making of such an agreement in the circumstances was within his apparent authority.

The chancellor's finding "that the bank had no legal or equitable claim against the electric company by reason of this transaction" is merely a conclusion of law, and so is subject to review.

The agreement by the company's treasurer and general manager with the cashier of the bank for the retention of part of the money due the company on the contract and its application to payment of the notes held by the bank, in consideration of forbearance of suit by the bank, amounted to a present and perfected equitable assignment by the company of such sum for that purpose, was within the apparent scope of the treasurer's combined authority as receiving and disbursing officer of the company and its general manager, and binding on it, in the absence of knowledge by the bank of any limitation upon such authority.

The statement by the chancellor in his findings of fact that, on the facts found and a consideration of the nature of the agreement, he is unable to find that the company's treasurer and general manager had authority to make the agreed assignment, is a mere conclusion of law from the facts found, and so reviewable.

It seems that the promise by the bank to forebear suit was a sufficient consideration for the assignment to it by the company of part of the amount owed it by the cashier and his associates under the contract for equipping the building, and the pre-existing obligation of the company to the bank on the notes was alone a sufficient consideration for the assignment.

Limitations imposed by the by-laws of a corporation upon the apparent authority of its officer will not affect one who in good faith deals with such officer within the scope of his apparent authority, without knowledge of such limitation, for such an one is not legally chargeable with knowledge of extrinsic facts that abridge such apparent authority.

APPEAL IN CHANCERY, Washington County. This is a bill of interpleader, and has been once before in the Supreme Court; see 87 Vt. 181. Such proceedings were had that the plaintiffs were ordered to pay the money in question into court, which they did, and were then discharged with their costs. The defendants were ordered to interplead, which they did; and hearing was had at Chambers, July 30, 1914, on the pleadings and findings of fact by the Chancellor, *Slack*. Decree, directing the fund to be paid to the assignee for creditors of the Green Mountain Electric Company, and ordering the Barre Savings Bank & Trust Company to pay the assignee the taxable costs of the Electric Company. The Barre Savings Bank & Trust Company appealed. The opinion states the case.

*H. William Scott, Alland C. Fay* and *Richard A. Hoar* for the Barre Savings Bank & Trust Company.

*Theriault & Hunt* for the Green Mountain Electric Co.

TAYLOR, J. This case is before the Court for the second time. When here first it had been submitted to the chancellor on the pleadings and was brought up on the appeal of the Barre Savings Bank & Trust Co. from a decree in favor of the Green Mountain Electric Co. For the sake of brevity we will refer to the claimants as the bank and the electric company. When the case was first here it was held that the case as submitted to the chancellor was not ripe for decision and it was remanded for further proceedings. Since the remand there has been a trial

before the chancellor, who on the facts found has decreed the fund in controversy to the electric company and the bank again appeals. Exceptions to certain findings and to the denial of certain requests for findings have been reserved for review.

The issues made in the pleadings sufficiently appear from the statement to be found in the former opinion. See 87 Vt. 181, 88 Atl. 732. The principal fact in issue was as to the authority of H. D. Larabee, who assumed to act for the electric company, to enter into the arrangement by which it was attempted to assign the fund in controversy to the bank. Because of its bearing upon this issue another important question was as to the relation of the electric company to the indebtedness represented by the notes held by the bank. As to this matter the following facts are found by the chancellor.

In the spring of 1909 one F. W. Nichols owned an electric business located in the city of Barre. Early in May of that year E. E. Larabee and H. D. Larabee, who were father and son, negotiated with said Nichols for the purchase of said business for the Green Mountain Electric Co. E. E. Larabee was president of the corporation and H. D. Larabee its treasurer and general manager, and both members of the board of directors. During the negotiations the Larabees had a talk with Frank G. Howland, the treasurer of the Barre Savings Bank & Trust Co., about securing a loan from the bank to the electric company of $3,000 to be used in part to pay for the Nichols property. After submitting the matter to the directors of the bank Howland reported that the bank would not make the loan to the electric company and take its notes therefor, assigning as the reason that notes signed by the electric company alone would not meet the requirements of the banking laws of the state. At a meeting of the corporation held on May 1, 1909, the electric company voted to purchase the Nichols property under the following resolutions which were unanimously adopted:

"Resolved: That the corporation purchase of E. E. Larabee the stock in trade, fixtures, furniture, business good will and all other property excepting the accounts receivable of the electrical business lately owned and carried on in Barre, Vermont, by F. W. Nichols of said Barre under the name of the Standard Electric Company, all of which property the said E. E. Larabee now owns; and further

Resolved: That this corporation pay for said property the sum of three thousand five hundred ($3,500.00) dollars by issuing to said Larabee its full paid, non-assessable stock to that amount, said stock to be issued to said Larabee upon the following conditions: The said E. E. Larabee has given to the Barre Savings Bank & Trust Company his notes for three thousand dollars ($3,000.00), the avails of which have been used for the purchase of said property from said Nichols, which said notes are to be endorsed by this company; and if said company shall pay and satisfy said notes or renewals thereof at its convenience and as the same may become due, the said Larabee will surrender and return to said company such proportion of said three thousand five hundred ($3,500.00) dollars par value of said capital stock as the amount of notes so finally paid and satisfied by this company is part of three thousand ($3,000.00) dollars.''

On May 3, 1909, Nichols conveyed the property to E. E. Larabee for $2,200, receiving in payment the check of the electric company, and the said Larabee immediately conveyed it to the electric company. On the same day the bank made a loan of $3,000 and received as evidence thereof three one-thousand dollar notes payable on demand and signed by E. E. Larabee, H. D. Larabee and F. W. Nichols. On the same day the electric company opened an account with said bank, deposited the proceeds of said notes and drew its check for $2,200 to said Nichols in payment for said property. The electric company had the benefit of the balance of the proceeds of said notes. On the same day the electric company issued to E. E. Larabee a certificate of thirty-five shares of its capital stock of the par value of $100 each. From the allegations of the bill, which are admitted in the answers of both defendants, it appears that said certificate was deposited with said bank as collateral security for said notes. E. E. Larabee was the principal stockholder of the electric company, owning about seven-eighths of its capital stock. At the time said notes were given H. D. Larabee agreed that they should be paid at the rate of one thousand dollars a year ''from the proceeds of the business of the electric company.'' In this connection the chancellor finds that H. D. Larabee had no authority to make the agreement that said notes should be paid from the proceeds of the business of the electric company and that the agreement was never confirmed nor ratified

by the corporation, nor by its officers, directors or stockholders. It was claimed by the bank that the indebtedness arising from the loan was in fact the indebtedness of the electric company and not of the signers of the note. The chancellor states that he is unable to find that such was the intention of the parties, or the effect of the transaction, in view of the fact that the electric company issued stock to E. E. Larabee in payment for the property purchased.

The agreement made by H. D. Larabee as to the payment of the notes amounted to an agreement that the electric company would pay the notes at the rate of one thousand dollars per year. As to his authority to make the agreement, it may be conceded that, if the indebtedness to the bank was not for the electric company to pay, Larabee would have no implied authority to make the agreement; but it does not follow that express authority to make such an agreement would be required, if the corporation had agreed to assume the obligation. It might be within the general scope of his authority as treasurer and manager; and, if not within the actual scope of his authority, then within its apparent scope. If the chancellor's finding of want of authority should be taken as a finding of a question of fact, it is conclusive upon this Court, which sits in chancery appeals as a court of error. On the other hand, if it be regarded as a conclusion of law and error is found, it would be our duty to rectify it. If the finding is construed to mean that express authority to make the agreement was not given, it is consistent with the other findings, while otherwise it would not be; so we give it that construction. It remains to consider whether Larabee had implied, or apparent authority as treasurer and manager of the corporation to make the agreement, which we have intimated depends upon the relation of the electric company to the indebtedness.

The chancellor's finding "that the bank had no legal or equitable claim against the electric company by reason of this transaction" is merely a conclusion of law and so is subject to review. He has reported the resolutions of the corporation under which the property was purchased but gives them no force in reaching his conclusions. In refusing a certain request by the bank he states that the evidence discloses that the resolutions on which the request was based were never carried out. Under an exception to the refusal to find as requested the transcript of the evidence is referred to, and made part of the cause so far as

it is made material by any of the exceptions. An examination of the transcript discloses no evidence that the provisions of the resolutions were not carried out, except that the notes were not indorsed by the electric company; while all the testimony on the subject was to the effect that the loan was negotiated in accordance with the terms of the resolution. The chancellor states that he is unable to find that the bank acted upon the strength of what appeared in these resolutions, or had any knowledge concerning them. Whether the bank acted upon the strength of the resolutions is unimportant upon the question now before us; and the fact that it did not know of the provision that the electric company was to indorse the notes serves to explain why they were taken without its indorsement. The fact that the electric company did not indorse the notes is not sufficient to justify the finding which is against the undisputed testimony in the case. The evidence on that question being before us we are justified in rejecting the finding that the resolutions were not acted upon.

Construing the resolutions in the light of the reported facts there is room for but one conclusion. While the resolutions antedated the giving of the notes and the transfer of the property through E. E. Larabee to the corporation, their language indicates clearly that the corporate action was taken in pursuance of an arrangement already made to be carried out thereafter. It is equally clear that as a part of that arrangement the electric company was to pay the notes at its convenience as they or their renewals became due. It would be within the apparent scope of the general authority of H. D. Larabee as treasurer and manager of the electric company to agree as to the time and manner of making such payments; and, in the circumstances, his agreement that the electric company would pay the notes at the rate of one thousand dollars a year would at least afford the basis of an equitable claim against the corporation. The chancellor's holding that the bank had no such claim against the electric company was therefore erroneous.

We come now to the main question in the case. The claim of the bank to the fund rests upon an alleged assignment made by H. D. Larabee assuming to act for the electric company. The facts leading up to the assignment were not controverted. In July, 1909, the orators engaged the electric company to equip a building they were constructing with electric wires and fixtures,

at prices aggregating approximately $3,000. The contract was made between H. D. Larabee, representing the electric company, and Frank G. Howland, representing the orators. Sometime in April, 1910, when the work under the contract was partly finished, the said Larabee for the electric company applied to the said Howland for a partial payment on the contract. Howland informed him that it was the intention of his firm (the plaintiffs) to apply what was due and to become due thereon on the notes held by the bank; that the bank contemplated bringing a suit on the notes and trusteeing the orators. As a result of these negotiations it was agreed between Larabee and Howland that the plaintiffs should pay the electric company $1,500 and that the balance due and to become due on said contract should be paid by the plaintiffs to the bank to be applied in payment of one of the one-thousand dollar notes and the interest for one year on the entire indebtedness. Thereupon the plaintiffs paid $1,500 to the electric company and retained the balance of the contract price for the bank until the bringing of this bill of interpleader. Frank G. Howland during all the time involved in this case was the treasurer of the claimant bank.

The agreement between H. D. Larabee and Howland amounted to a present and perfected assignment of the balance due from the orators to the electric company, or of so much thereof as would be required to make the payments agreed upon, if Larabee had authority to make the agreement on behalf of the electric company. See *Hutchins*.v. *Watts, Tr. & Cl.,* 35 Vt. 360; 2 R. C. L. 614 and cases cited in notes. This is not questioned by the electric company, but it contends that Larabee acted without authority. The question of his authority being properly raised, doubtless the burden of showing a valid legal or equitable assignment of the fund to it rests upon the bank.

The question of the electric company's solvency at the time of the assignment is raised by the pleadings, but is rendered immaterial by the finding that the bank had no knowledge of the financial condition of the company until about the time of its assignment for the benefit of creditors, which was several months after the assignment of the fund to the bank.

It is objected that the assignment was without consideration, but this position is untenable. To say nothing concerning an agreement to forbear bringing a trustee suit; the pre-existing obligation of the electric company to the bank furnished a suffici-

ent consideration to support the assignment. *Blin* v. *Pierce*, 20 Vt. 25, 29. Howland being the representative both of the bank and the orators, no question of notice is involved.

As to Larabee's authority to make the agreement the chancellor states that, upon the facts stated and a consideration of the nature of the agreement, he is unable to find that he had such authority. It is urged by the electric company that this finding is conclusive and leaves nothing on which to predicate error. Here again, if the finding is to be regarded as a finding of fact, it is fatal to the claim of the bank; but we do not regard the finding as one of fact, but rather as a conclusion of law from the facts found. The language of the "finding" sets that question at rest.

The chancellor states in effect that Larabee was entrusted with the general management of the business of the corporation. He was a director and the treasurer and manager of the company. As treasurer he was the receiving and disbursing officer of the corporation. If his authority as such was in any way restricted by the by-laws of the company, the limitation did not affect the apparent scope of his authority, as it is expressly found that Howland, who represented the bank in all its dealings with the electric company, had no knowledge of the by-laws of the corporation; and it is not made to appear that the bank could have had such knowledge through any one else. Secret limitations imposed by a by-law of a corporation upon the apparent general authority of an officer will not affect one who, in good faith, deals with him in the general line of his authority without actual or imputed knowledge of such limitation. 7 R. C. L. 625 and cases cited in notes. This is a well recognized exception to the general rule that persons dealing with corporate officers and agents are bound to take notice of the extent of their authority. A person dealing with a corporate officer or agent acting within the apparent scope of his authority is not charged with knowledge of extrinsic facts making it improper for him to act in that case. 7 R. C. L. 626.

It was within the apparent scope of Larabee's authority as manager and treasurer of the electric company to make the agreement. See 3 Cook on Cor. 2515; *Cope* v. *Walton*, 77 N. J. Eq. 512, 76 Atl. 1044. The bank being ignorant of any limitation upon this apparent authority, and want of good faith not appearing, it must be held that Larabee's agreement operated as

a valid equitable assignment of so much of the fund as would be required to pay one of the notes and a year's interest on the whole indebtedness, or $1,180. On the findings the balance of the fund belongs to the electric company. The result is that the decree of the whole fund to the electric company was erroneous.

This disposition of the case makes it unnecessary to consider the exceptions reserved by the bank.

*Decree reversed and cause remanded with directions to enter a decree in favor of the Barre Savings Bank & Trust Co. for $1,180 and in favor of the Green Mountain Electric Co. for the balance of the fund in the hands of the clerk, as of the time when the money was paid into court. Let the bank recover its costs in this Court.*

## ON MOTION FOR RE-ARGUMENT.

After the above opinion was filed at the October Term the Green Mountain Electric Company filed a motion for a re-argument, whereupon the entry order was withheld and the case left with the Court.

Several grounds are assigned in the motion, but they are so related as not to require independent consideration. It is said that the Court has construed certain findings of the chancellor by inferences against the decree below. A careful reading of the opinion does not support this objection. We regard certain "findings" as mere conclusions of law in view of all that appears, as only by doing so can the findings be made consistent. Our decision is based upon no inference of fact outside of those expressly found by the chancellor.

Several grounds of the motion are based upon the claim that the Court has disregarded the finding of the chancellor that it was not the intention of the parties that the loan of $3,000 be made to the Electric Co. instead of the signers of the notes, nor that such was the effect of the transaction. This finding has been given due consideration. The objection loses sight of the fact that the Electric Co. had agreed with the signers of the notes by formal action of the corporation to pay the notes or their renewals. As between the corporation and the signers the indebtedness was for the Electric Co. to pay. We are forced to

reject the chancellor's conclusion that the bank had no legal or equitable claim against the Electric Co. by reason of the transaction for reasons stated in the original opinion.

It is said that, in deciding that H. D. Larabee had implied authority as treasurer and manager of the corporation to make the agreement with the bank as to the payment of the notes, the Court has overlooked the finding that at the time said Larabee made the agreement he represented the makers of the notes. This objection relates to that part of his findings in which the chancellor says: "It appeared from the evidence of both said Howland and H. D. Larabee that at the time said notes were given there was an agreement between said Howland representing the bank and H. D. Larabee representing the makers of said notes that said notes should be paid at the rate of one thousand dollars a year from the proceeds of the business of said Electric Company." It appears elsewhere in the findings that H. D. Larabee was at the time treasurer and manager of the Electric Co. The quoted finding does not amount to a finding that he was not acting as an officer of the corporation in making the agreement. Though representing the signers, who it should be observed were stockholders of the corporation, his agreement was the agreement of the corporation because of his official relation to it and its antecedent vote to assume the liability of the signers.

As to the objection that the threat to institute a trustee suit did not afford a consideration for the assignment to the bank of the fund in plaintiffs' hands, it is enough to say that our decision does not rest upon that as a consideration. It is said that, in reaching the conclusion that the assignment was valid under the implied authority of H. D. Larabee to make it as treasurer and manager of the corporation, the Court has overlooked the finding that there was no evidence as to whether the bank had knowledge of the by-laws of the corporation. It was in this connection that the chancellor found that Howland had no knowledge of such by-laws. These findings were made in answer to a request by the bank for a finding that neither Howland nor the bank had any knowledge of the by-laws of the Electric Co. The portion of the opinion to which this objection relates is a discussion of the question of H. D. Larabee's authority, assuming that it was in any way restricted by the by-laws of the corporation. It is a sufficient answer to this objection to say that it does not appear

from the chancellor's findings that there was any by-law limiting his apparent authority to make the agreement. This being so, the objection is to a matter not necessary to the decision of the case.

.*The motion for a re-argument is without merit and is denied. The entry order is no longer withheld. Let the mandate go down.*