GEORGE ROBEN v. RYEGATE LIGHT & POWER COMPANY.

November Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 4, 1917.

*Evidence—Admissibility—When Admission of Immaterial Evidence is Reversible Error—Contracts—Powers of General Manager of Corporation—Substituted Contract—Jury Question—Variance—Amendment after Remand—Practice Act —Public Service Corporations—Jurisdiction of Courts.*

In an action brought to recover damages for the alleged breach by defendant of a contract to supply adequate electric power for plaintiff's mill after a certain date, evidence of a shortage of power supplied by defendant for the mill before that date was inadmissible, although received solely for the purpose of comparison between conditions during the times to which the testimony related and times later on.

The admission, under exception, of immaterial evidence, which is prejudicial to the excepting party is reversible error, in the absence of an emphatic instruction to the jury to disregard it.

A statement made to plaintiff by one who was president and general manager of defendant electric power corporation, that the corporation would enlarge its capacity to furnish power, is not a part of an oral contract between plaintiff and defendant as to the furnish-

ing of power by the latter to the former, where a change in the character of the power plant was not within the powers of the general manager under the by-laws of the corporation, nor within his apparent power, and plaintiff had no right to understand the contrary.

It was within the authority of the general manager of an electric power company to contract in its behalf with a customer that no more electric motors would be taken on by the company than could be carried by it.

Where it cannot be said, as matter of law on all the evidence, that a new contract between the parties has been substituted for the one upon which suit was brought, the question is for the jury.

On remand from Supreme Court a variance between declaration and proof may be cured by amendment, under the Practice Act, (No. 90, Acts 1915).

The jurisdiction conferred upon the Public Service Commission over public service corporations does not deprive the courts of jurisdiction of actions of contract against such corporations, to say nothing of actions in general.

CONTRACT. Plea, the general issue. Trial by jury at the June Term, 1916, Caledonia County, *Waterman,* J., presiding. Verdict for plaintiff. Defendant excepted. The opinion states the case.

*Dunnett & Shields* for defendant.

*S. Hollister Jackson* and *Robert W. Simonds* for plaintiff.

HASELTON, J. This is an action of contract. The plaintiff seeks to recover damages for a claimed failure of the defendant to supply him with electric power in accordance with its agreement. Trial by jury was had and verdict and judgment were for the plaintiff. The defendant brings exceptions.

Mr. Roben testified that he had lived in South Ryegate for about 30 years; that he had been in the granite manufacturing business there and elsewhere, that M. F. Sargent owned a granite shed there, and that the machinery therein belonged to the estate of the Osgood Granite Company that had done business and failed there. That there was at South Ryegate a power company named the Ryegate Light and Power Company. That

after having been out of the granite business at South Ryegate for a while he had some talk with M. F. Sargent about again going into the business there. That he talked with Mr. Sargent about renting his shop and buying the Osgood machinery. Mr. Sargent not only was the owner of the shed referred to but was president and general manager of the Ryegate Light and Power Company. Mr. Roben in this talk told Mr. Sargent that he thought he could make, with the Townsend Granite Company, a contract that would look pretty good, if he could buy the machinery right and get a steady power. Mr. Sargent later saw the plaintiff two or three times and said there would be no trouble about the power because they had got to do something and were going to do something the coming summer, either put in an auxiliary plant, or get water from falls higher up, they had got to do something to make the power better. That if the plaintiff should go in there and buy that machinery they would not take on any more motors until such time as they could take care of them. Thereafter the plaintiff made a contract with the Townsend Company, bought the Osgood machinery and started in business there in February, 1912.

The plaintiff was one of the incorporators of the defendant company, and had been a stockholder therein, and knew of the condition of things and the troubles with regard to power at the time of the conversations resulting in the claimed contract; knew the situation.

The plaintiff states in his brief that "no claim was made or in any manner suggested that the plaintiff asked damages for lack of power before the fall of 1912." The plaintiff did not claim that under the contract he was entitled to adequate power until after the summer of 1912. Yet a good deal of testimony was put in by him, under objection and exception, relating in detail to his troubles from lack of power from February, 1912, through the spring and summer. There was and could be no claim that these troubles resulted from any breach of contract on the part of the defendant. Some of the testimony was received solely for the purpose of comparison between the conditions of things during the times to which the testimony related and times later on, but the testimony was inadmissible as so limited, for if the contract which the plaintiff claimed existed, he was entitled to adequate and not comparative power at the later time. But the plaintiff, as a witness in his own behalf,

persisted in claiming damage under the contract from the time he started in up to the time he quit, as is emphatically shown on pages 119 and 120 of the transcript.

Under this claim, a somewhat minute story, which the plaintiff told, of the stoppage of power from fifteen to twenty times a day, and of enforced idleness on the part of his men, at times when the defendant was living up to its contract, must have been extremely prejudicial to the defendant. In one passage in the charge the court told the jury, in substance, that if they found the contract claimed by the plaintiff and its breach by the defendant, they could not allow damages for lack of power until the expiration of the summer of 1912, but the jury were not told to disregard the evidence of such prior lack of power and its consequences; and, as the prejudicial evidence had no place in the case, and yet was admitted against persistent and carefully explained objections, we feel that in the absence of emphatic directions to disregard it, it operated injuriously to the rights of the defendant, and that its admission necessitates a reversal.

The breach of the contract was alleged to be in two particulars: First, that the corporation did not enlarge its capacity to furnish power; and, secondly, that it took on another motor to the detriment of the plaintiff and contrary to the agreement of the general manager. The breach first alleged was no breach of any contract to which the defendant was a party, for the change in the character of the plant was not within the powers of the general manager as expressed in the by-laws nor within his apparent power, and the plaintiff had no right to understand that it was; and the statements of the manager in that regard, the plaintiff was bound to understand as no more than a free expression of the views of the manager as to what the company would find it necessary to do and would do. The language used imports this and fairly imports no more. The claim that what Sargent said about installing an auxiliary plant or procuring power elsewhere constituted no part of a contract between the plaintiff and the defendant was raised in various ways by exceptions, and the claim must be sustained. That the general manager was also president of the company is immaterial here. *Lyndon Mill Co.* v. *Lyndon, etc., Institution,* 63 Vt. 581, 22 Atl. 575, 25 Am. St. Rep. 783; 7 R. C. L. 628.

The second alleged breach stands differently. It was within the power of the general manager to assure the plaintiff that no more motors would be taken on than could be carried, and to make such assurance a part of the claimed contract, for that assurance related to the management of the existing business. *Howland Bros.* v. *Barre, etc., Co.,* 89 Vt. 290, 299, 95 Atl. 679. And the testimony on the part of the plaintiff tends to show that in the fall of 1912, a new power taker was taken on in violation of the agreement and to the detriment of the plaintiff. Exceptions were taken relating to that aspect of the case but they are not sustained.

The defendant claimed that if there was a contract between the plaintiff and the defendant against overloading, it was discharged by mutual agreement in October, 1912, and a new contract substituted under which evidence as to inadequate power thereafter was inadmissible and such evidence was received under objection and exception. However, upon a review of the whole testimony relating to the matter, we cannot say that as matter of law, there was such a substituted contract; the evidence presented a question for the jury, and the exception in question does not avail.

At the close of the evidence the defendant made a motion for a directed verdict in its favor on various grounds. This motion was overruled and an exception taken. The distinct grounds of the motion raise questions already considered, and that the motion could not be granted on either of those grounds sufficiently appears from what has already been said.

We do not think that the question of variance between the contract alleged, and that which the plaintiff's evidence tended to prove, was distinctly raised, nor that it can fairly be said to be briefed. But treating that question as both raised and briefed, we reverse for error elsewhere herein pointed out, and remand that effect may be given to the Practice Act. *Manley Bros.* v. *Boston & Maine Railroad,* 90 Vt. 218, 222, 97 Atl. 674.

The defendant is one of the companies of numerous classes of which the Public Service Commission has general supervision. Acts of 1908, No. 116, §§ 2, 3. The defendant requested the court to charge to the effect that if the plaintiff felt himself aggrieved, his only remedy was through an application to such Commission; that the alleged contract was such that the plaintiff should have been compelled to take the matter up with the Public

Service Commission. These requests were denied and their denial was proper. The jurisdiction conferred upon the Public Service Commission over public service corporations does not deprive the courts of jurisdiction of actions of contract against such corporations, to say nothing of actions in general.

Exceptions not discussed were taken, but the questions already considered and disposed of necessarily require the course of a new trial so to differ from the former that it is unprofitable to consider the exceptions here left untouched.

*Judgment reversed and cause remanded.*