DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

NOVEMBER TERM, 1915.

---

PUBLIC SERVICE ELECTRIC COMPANY, RESPONDENT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND THE CITY OF PLAINFIELD, APPELLANTS.

*Argued November 18, 1915—Decided March 6, 1916.*

1. The provisions of the act concerning public utilities (*Pamph. L.* 1911, *p.* 374, § 18), (*a*) that no public utility shall make any unjust or unreasonable, unjustly discriminatory or unduly preferential rate, or (*d*) give, directly or indirectly, any undue or unreasonable preference or advantage to any person, corporation or locality, is prospective and not retroactive.
2. Statutes are to be given prospective and not retroactive effect unless their language makes them retroactive and admits of no other construction.
3. The agreement made in 1898 between the city of Plainfield and the Plainfield Gas and Electric Light Company, whereby the latter, in consideration of the passage of a certain ordinance by the former, designating certain streets and highways in that municipality through and upon which posts or poles of the lighting company might be placed and maintained, &c., contracted that it, its successors and assigns, would at all times light by electricity free of charge the common council chamber and certain buildings and offices occupied for city purposes—is enforceable against the Pub-

603

604    COURT OF ERRORS AND APPEALS.

Pub. Serv. Elec. Co. v. Bd. of Pub. Util. Com.    *88 N. J. L.*

lic Service Electric Company, which subsequently took over the rights and privileges and assumed the duties and obligations of the Plainfield Gas and Electric Light Company, notwithstanding the provisions of *Pamph. L.* 1911, *p.* 374, § 18 (*a*) and (*d*).

4. The language of *Pamph. L.* 1911, *p.* 374, § 17, (*a*) which provides that the board of public utility commissioners shall have power to require every public utility to comply with the laws of this state and any municipal ordinance relating thereto and to conform to the duties imposed upon it thereby or by the provisions of its charter, does not confer upon the board a power to decree the specific performance of a contract, which is an equitable power exclusively inhering in the court of chancery and which is part of the jurisdiction confirmed and guaranteed to that court by the constitution of 1844; but, even if the act in express terms had bestowed that power upon the board, it would have been an unlawful invasion of the court's exclusive prerogative, and therefore unconstitutional.

5. The legislature cannot impair the jurisdiction of a constitutional court by preventing its exercise or creating a co-ordinate authority.

6. A question not presented and argued in an appellate court will not be considered by such tribunal.

---

On appeal from the Supreme Court, whose opinion is reported in 87 *N. J. L.* 128.

For the Public Service Electric Company, *Frank Bergen.*

For the city of Plainfield, *Charles A. Reed.*

For the Board of Public Utility Commissioners, *Grover C. Richman* and *Frank H. Sommer.*

For the New Jersey State League of Municipalities, *John Milton, Albert O. Miller, Jr.,* and *Spaulding Frazer,* for whom they filed a brief by the consent of counsel and leave of the court.

The opinion of the court was delivered by

WALKER, CHANCELLOR. On July 12th, 1898, the city of Plainfield, by ordinance, designated certain streets and highways in that municipality through and upon which posts or

NOVEMBER TERM, 1915.     605

*88 N. J. L.*     Pub. Serv. Elec. Co. v. Bd. of Pub. Util. Com.

poles of the Plainfield Gas and Electric Light Company might be placed and maintained, providing for the manner of placing the same and for the construction, maintenance and use by the company of underground conduits, cables, &c., for the distribution of electricity for light, heat and power.

On November 26th, 1898, the Plainfield Gas and Electric Light Company and the city of Plainfield, by their respective corporate names and under their corporate seals, made and entered into a written agreement which recited that it was understood and agreed before the passage of the ordinance mentioned, and in consideration thereof, that the light company should enter into the contract for the benefit of the city and of persons residing therein. It contained an agreement that the company, its successors or assigns, would at all times thereafter, while it, its successors or assigns, should continue to use any of the streets of the city, light by electricity, free of charge, the common council chamber, the office of the mayor, collector, street commissioner and city clerk, city jail, station-house, almshouse, fire houses and all offices, rooms or buildings, owned or occupied by the city officers, or that might thereafter be owned or occupied for city purposes.

Subsequently, the Public Service Electric Company acquired and took over the rights, privileges and duties of the Plainfield Gas and Electric Light Company, and the ordinance and agreement mentioned thereupon became binding upon the Public Service Electric Company.

Since the date of the ordinance and agreement the Plainfield Gas and Electric Light Company, and its successor, the Public Service Electric Company, have continued to use the streets of Plainfield in the ordinance and agreement mentioned, and continued to light by electricity, free of charge, the offices and buildings owned or occupied by the city for city purposes until February 1st, 1914, when the Public Service Electric Company discontinued and further refused to do such lighting in accordance with a notice served on the city on or about December 8th, 1913.

606 COURT OF ERRORS AND APPEALS.

Pub. Serv. Elec. Co. v. Bd. of Pub. Util. Com. *88 N. J. L.*

The ground upon which the Public Service Electric Company rests its refusal to be further bound by the terms of the agreement, in so far as it provides for the lighting of the municipal buildings of the city without charge, is, that *Pamph. L.* 1911, *p.* 374, the statute creating the board of public utility commissioners, enacts that no public utility as therein defined shall make any unjust or unreasonable, unjustly discriminatory or unduly preferential rate for any product or service supplied or rendered by it within this state or make or give directly or indirectly any undue or unreasonable preference or advantage to any person or corporation or to any locality; and that, by the terms of the act, the company can no longer furnish the light provided for in the agreement free of charge, because that would be discriminating in favor of Plainfield and according a preference to that city.

Upon the refusal of the company to furnish the light the city presented a petition to the board of public utility commissioners praying that it make an order requiring the company to comply with the agreement and to continue lighting the municipal builings in conformity with its terms. After hearing, the board made an order directing the company to conform to the duties imposed upon it by the agreement and to furnish free of charge to the city of Plainfield such service as the agreement provided for.

Upon *certiorari* to the Supreme Court the order so made was set aside upon the ground that the provision of the agreement for free service to the municipality was avoided by the enactment of the provision of the Public Utility act prohibiting undue and unreasonable discrimination.

The opinion of the Supreme Court properly states that the statute creating the board of public utility commissioners (*Pamph. L.* 1911, *p.* 374) gives the board power to enforce certain legal obligations, but that the language is not broad enough to confer upon it power to enforce the specific performance of contracts; that the order made directs the specific performance of a contract between the parties, and appears to be invalid for that reason. The Supreme Court, in its

opinion, also stated that the order was sought to be set aside, not only because of the Public Utility act of 1911, *supra,* which forbids the making or giving, directly or indirectly, of any undue or unreasonable preference or advantage to any locality, but also upon the provision of the supplement to the Crimes act (*Pamph. L.* 1913, *p.* 27), which makes it a misdemeanor for any corporation engaged in the production, manufacture, distribution or sale of any commodity of general use or rendering any service to the public, to discriminate between communities or cities, by selling such commodity or rendering such service at a lower rate in one section, community or city than in another, but held that whether or not the act of 1913 was applicable, was unimportant, and therefore it was not considered and no opinion was expressed concerning it. Nor will this question be considered in this court, as it was not presented and argued here, and, therefore, upon familiar principle, will be held to have been waived and abandoned. See *Howell* v. *Edwards, ante p.* 134.

The language of section 18 of the act concerning public utilities (*Pamph. L.* 1911, *p.* 380) is that "no public utility as herein defined shall (*a*) make, impose or exact any unjust or unreasonable, unjustly discriminatory or unduly preferential * * * rate," &c., or (*d*) "make or give, directly or indirectly, any undue or unreasonable preference or advantage to any person or corporation or to any locality," &c. This language, it will be observed, is entirely prospective and not at all retroactive.

It has been decided over and over again that statutes are to be given prospective and not retroactive effect unless their language makes them retroactive and admits of no other construction. See *Citizens Gas Light Co.* v. *Alden,* 44 *N. J. L.* 648; *Williams* v. *Brokaw,* 74 *N. J. Eq.* 561; *Frelinghuysen* v. *Morristown,* 77 *N. J. L.* 493; *Plahn* v. *Givernaud,* 96 *Atl. Rep.* 40.

By the convention of the parties, in 1898, the city of Plainfield acquired the right to have free lighting by electricity of certain of its buildings, offices, &c., from the Plainfield Gas

608    COURT OF ERRORS AND APPEALS.

Pub. Serv. Elec. Co. v. Bd. of Pub. Util. Com.    *88 N. J. L.*

and Electric Light Company, whose successor, the Public Service Electric Company, afterwards took over its property and franchises subject to its burdens. Thus arose, and has continued, the obligation of the lighting company to the city under a purely contractual relationship. The language of the statute against unjust discrimination and unreasonable preference is, that they "shall" not be made or given, and there is no language indicative of an intent on the part of the legislature to make provision that contracts already in existence shall come under the ban of this prohibition. The word "shall" is an irregular auxiliary verb, and used with the verb "make," is a verb phrase, which, in this statute, is used to prohibit a contingent future event. See *State* v. *Griffin,* 85 *N. J. L.* 613, 616. It is perfectly clear that the statute is without retroactive effect, and that it cannot operate upon the contract of 1898, which, concededly, was lawful when made. There is, therefore, no question in the case as to the state's power to impair or abrogate a contract to which a municipality or the public are parties.

The power of the board of public utility commissioners to order the performance by the Public Service Electric Company of the undertakings in the contract mentioned, is said to reside in section 17 (*a*) of the Public Utilities act, *supra,* which provides that the board shall have power, after hearing and upon notice, by order, in writing, to require every public utility "to comply with the laws of this state and any municipal ordinance relating thereto and to conform to the duties imposed upon it thereby or by the provisions of its own charter." It is plain that the obligations in the contract under consideration do not reside in any law of this state (assuming this to mean any statutory enactment), are not imposed by any municipal ordinance relating to the company and are not duties imposed upon it thereby, or by the provisions of its charter. Therefore, when the board of public utility commissioners assumed by order to direct the company to perform the duties imposed upon it by the agreement and to furnish free of charge to the city of Plainfield such

service as the agreement provided for, the board went beyond the powers conferred upon it by the act creating it and prescribing its powers, and, in effect, ordered the specific performance of a contract, an equitable power exclusively inhering in the Court of Chancery (*Pom. Eq. Jur.* (*3d ed.*), § 138), and which is part of the jurisdiction confirmed and guaranteed to it by the constitution of 1844. There is nowhere discoverable in the act any legislative intent to clothe the board of public utility commissioners with this constitutional jurisdiction of the Court of Chancery; but, even if the act expressly and in terms had bestowed that power upon the board, we would have no hesitation in pronouncing it an unlawful invasion of the court's exclusive prerogative, and therefore unconstitutional. And if by the phrase "laws of this state" is meant the unwritten as well as the statutory law, the result would be the same so far as any attempt to bestow the power of specific performance on the board is concerned.

The legislature cannot impair the jurisdiction of a constitutional court either by preventing its exercise or creating a co-ordinate authority. *Flanigan* v. *Guggenheim Smelting Co.*, 63 *N. J. L.* 647, 650; *Smith* v. *Livesey*, 67 *Id.* 269; *Ex parte Thompson*, 96 *Atl. Rep.* 102, 106.

The views above expressed lead to an affirmance of the judgment under review.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, BERGEN, MINTURN, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 12.

*For reversal*—None.