JULIAN R. CLARK ET AL. *v.* CITY OF BURLINGTON ET AL.

October Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed November 19, 1928.

392

394

*Warren R. Austin,* and *William H. Edmunds* for the petitioners.

*Theo. E. Hopkins,* city attorney of Burlington, *Erwin M. Harvey,* commissioner of taxes, *J. W. Carver,* Attorney General, *Stanley C. Wilson,* and *Hale K. Darling* (of counsel) for the petitionees.

MOULTON, J. This is a petition for a writ of certiorari. Originally there were ten petitions, brought by ten separate petitioners, all predicated upon the same facts, and praying for the same relief, but, by order of this Court, all have been consolidated and heard as one case. The proceeding brings in question the constitutionality of section 5 of No. 15 of the Acts of 1927, which provides for the method of assessment of shares of the capital stock of corporations for purposes of taxation of the owners thereof.

The petitioners are all residents of the city of Burlington, in Chittenden County, and are the owners, in varying amounts, of shares of capital stock in different corporations. The holdings of some of the petitioners are entirely of the stock of foreign corporations; of others, of that of both foreign and domestic corporations. These securities were assessed against the petitioners, as owned by them, by the assessors of the city of Burlington, for purposes of taxation, in the manner provided by the section of the statute above mentioned. An appeal was taken to the board of civil authority of the city, which affirmed the assessment. In due season, and with due regard for the provisions of the statute, the petitioners appealed from the decision of the board of civil authority to the commissioner of taxes, who thereupon, in pursuance to the provision of G. L. 843, appointed a board of three appraisers, all residents and taxpayers in Chittenden County, and designated the chairman of the board. The appraisers so appointed took and subscribed the oath of office, which was duly filed, and the commissioner

of taxes referred to them the appeal from the board of civil authority, with appropriate directions as to their duties. Notice was given and a hearing was held at which all parties interested appeared by counsel. No testimony was taken, but an agreed statement of facts was filled, which was adopted by the appraisers "as being the facts of this matter." The appraisers decided that the proceedings of the assessors of the city of Burlington and of the board of civil authority of that city were "strictly in accordance with the statutes of the State of Vermont and we therefore find and report that the appeal should not be sustained, (and) that the valuation fixed upon said property by the assessors and by the board of civil authority on appeal is the correct valuation of said property." Whereupon the present petition for a writ of certiorari was brought.

We commence our inquiry with full recognition of three fundamental doctrines. First: That the taxing power of the State extends to all persons and property within its jurisdiction not protected therefrom by federal supremacy. *State* v. *Clement National Bank,* 84 Vt. 167, 179, 78 Atl. 944, Ann. Cas. 1912D, 22; *Shaffer* v. *Carter,* 252 U. S. 37, 64 L. ed. 445, 456, 40 Sup. Ct. 221. Second: That every presumption is to be made in favor of the constitutionality of a statute, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law. *Village of Hardwick* v. *Town of Wolcott,* 98 Vt. 343, 348, 129 Atl. 159, and cases cited; *Bishop and Co.* v. *Thompson,* 99 Vt. 17, 24, 130 Atl. 701. Third: That a law for the assessment and collection of taxes is to be construed with the utmost liberality, and that the construction is not to be a critical one with a view to defeat the enactment, but a liberal interpretation, so as to uphold it if possible. *Union Trust Co.* v. *State,* 116 Md. 368, 81 Atl. 873, 874; *Turpin* v. *Lemmon,* 187 U. S. 51, 58, 47 L. ed. 70, 74, 23 Sup. Ct. 20.

The statute (section 5, No. 15, Acts 1927) which is attacked by this proceeding reads as follows:

"The commissioner of taxes shall advise the board of listers of any town upon request as to the appraisal valuation of any moneyed security; and in fixing the appraisal of shares of stock mentioned in section 1 of No. 21 of the Acts of 1925, as hereby amended, the same shall be based on

a value of which the annual dividend of the preceding calendar year is six per centum. Said commissioner of taxes may require such reports as he shall deem necessary.''

The statute is said to be (1) objectionable on its face, and (2) objectionable because of its effect in operation. As to the first ground of claimed invalidity, it is urged that the valuation of corporate stock by the Legislature by the mere mathematical calculations of dividends paid into a capital sum at the rate of six per cent. is an arbitrary, whimsical, capricious, erroneous, and oppressive valuation, because it applies the same fixed single factor to diverse and differing properties, and thus deprives the taxpayer of the rights secured to him by Chapter I, Article 9 of the Constitution of Vermont, which, to the extent here material, is as follows:

"That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute his proportion toward the expense of that protection * * * * *''

It is further urged that, by the statute, the taxpayer is deprived of his right to due process of law and equal protection of the law, under Section 1 of the Fourteenth Amendment of the Constitution of the United States; and of his right to have the legislative department separate and distinct from the judiciary department, so that neither exercises the powers properly belonging to the other, as provided in Chapter II, Section 5 of the Constitution of Vermont. These objections will be considered in their order.

Article 9 of Chapter I of the Constitution of Vermont, above quoted, is the only provision of that instrument which deals with the principle that taxes must be proportionately assessed. In speaking of the language therein used, Judge Veazey, in *Barnes* v. *Dyer*, 56 Vt. 469, 473, said:

"This is less restrictive than the constitutions of many states; but the cases which have established the rule that the statute authorizing an assessment must fix the legal standard to which it shall be made to conform, have not turned on the phraseology of constitutional provisions. It is everywhere treated as a general constitutional principle that no member of society shall be compelled to contribute

more than his proportion. Unless this is so there is no protection against arbitrary injustice in the imposition of taxes. To secure the protection courts have held that legislative enactments must set up as a standard, fix a rule, to be conformed to as a guide in all cases, an uniform, certain rule, so far as reasonably practicable, and not susceptible to different application to different individuals of the class to which it applies. If the enactment fails in this regard, it is deemed fatally defective. The proposition is sound, because it is an adherence to the fundamental principles which in a constitutional government are designed to protect the individual against injustice and oppression."

We have no constitutional provision as to the method of assessment of property for purposes of taxation. G. L. 766 provides that taxable personal property "shall, unless otherwise provided, be appraised by the listers at its value in money on the first day of April; and the listers shall appraise each item of such property at such sum as they would appraise the same in payment of a just debt due from a solvent debtor, having regard to the current value of such property and the sales thereof, other than auction sales, in the locality where it is situated." The appraisal prescribed by section 5 of No. 15, Acts of 1927, adopts a different manner of arriving at the valuation of the personal property therein mentioned, *i.e.*, shares of corporate stock. But there is no inconsistency between the two statutes, for G. L. 766 prescribes the method and amount of valuation only "unless otherwise provided," and section 7, No. 15, Acts of 1927, provides that: "This act shall be construed to be a part of No. 21 of the Acts of 1925, and all acts and parts of acts inconsistent with the provisions of this act are hereby suspended."

It is the claim of the petitioners that without appraisal the Legislature, in the act in question, fixes the "proportion" which the owners of corporate stock are obliged to pay; and that for this reason there is no valid assessment or valuation of the property taxed. It is said in *State* v. *Clement National Bank*, 84 Vt. 167, 182, 78 Atl. 944, 950, Ann. Cas. 1912D, 22:

"The word 'assessment' ordinarily implies an official listing of the persons and property to be taxed, and a valuation of the property of each person as a basis of apportion-

ment. This is usually done by officials specially appointed for the purpose. But in the case of solvent securities, certificates of deposit, mortgages, undivided profits, or the like, the nominal or face value of which is identical with the actual value, the assessment may be made by the Legislature without the intervention of assessing officers.''

It is urged that capital stock is not a class of property as to which legislative assessment is sufficient without a special valuation, because the nominal or face value is not identical with the actual value.

The word ''assessment'' is equivocal. It may mean either the act of apportioning the burden to be borne by the persons or property chargeable, or the particular burden assigned to each. *Milton* v. *Stell*, 73 N. J. Law, 261, 262, 62 Atl. 1133, 1134. The ultimate purpose of an assessment, when used in connection with taxation, is to ascertain the amount that each taxpayer is to pay. Sometimes this amount is called an ''assessment.'' More commonly the word ''assessment'' means the official valuation of a taxpayer's property for purposes of taxation. *State* v. *N. Y. N. H. & H. R. R. Co.*, 60 Conn. 326, 335, 22 Atl. 765, 768; *People ex rel. N. Y. Cent. & H. R. R. Co.* v. *Priest*, 169 N. Y. 432, 434, 62 N. E. 567; *People ex rel. Spencer* v. *Village of New Rochelle*, 83 Hun. 185, 187, 31 N. Y. S. 592. Being equivocal, the construction of the word is to be determined by the context, in accordance with the maxim ''*noscitur a sociis*.'' *Rhode Island Hospital Trust Co.* v. *Babbitt*, 22 R. I. 113, 115, 46 Atl. 403, 404. An assessment does not of itself lay the charge upon either person or property, but is a step preliminary thereto, and which is essential to the apportionment. *Evansville, etc., R. R. Co.* v. *Hays*, 118 Ind. 214, 20 N. E. 736, 739; Bouvier, Law Dict. (Rawle's 3rd Revision) tit. ''Assessments.'' See, also, *Meserve* v. *Folsom et al.*, 62 Vt. 504, 507, 508, 20 Atl. 926. It is used in the Clement Bank Case, above cited, as synonymous with the word ''appraisal'' appearing in the statute, and we so employ it here.

It is not accurate to say that, in the statute in issue, the Legislature has made the assessment—it is rather that the Legislature has directed the method by which the assessment shall be made by the officials thereto duly authorized. The doctrine of the Clement Bank Case that, in the case of securities

or other property of which the nominal or face value is identical with the actual value, the assessment may be made by the Legislature, does not forbid this. Indeed, it is said in *Rutland R. R. Co.* v. *Central Vermont R. R. Co.*, 63 Vt. 1, 22, 21 Atl. 262, 267, 10 L. R. A. 562:

> "The whole power of taxation under our system of government is lodged in the Legislature subject only to constitutional limitations. What subjects-matter shall be selected, what amounts shall be assessed, and the method of assessment and collection of taxes are solely questions for the Legislature to determine."

It is objected that this method of assessment does not determine the real value of the stock. In the agreed statement of facts appears the following:

> "There is an infinite variety of conditions which surrounds capital stock valuation, making it impossible to adopt a rate of capitalization of earnings for one year which will produce the real value of the capital stock in all corporations."

This is followed by an enumeration of the different factors affecting the stock which are to be taken into consideration in determining such real value. It is not necessary here to recite them all, but among them are the risk factors of the business conducted by the corporation; the marketability of the stock; the past record of the corporation with regard to the success of its operation; the depreciation policies of the corporation; the nature of its product; the good will of its customers, working force, and creditors; established processes and patents; and its trained management.

Granting all this, we do not think that the method of assessment prescribed by the statute is for this reason invalid. As we have seen, neither the Constitution nor the statute makes the money value of the property a necessary basis for appraisal. It cannot be denied that dividends paid even during the space of one year have a certain influence upon the value of the stock. In *Commonwealth* v. *Delaware Div. Canal Co.*, 123 Pa. 594, 16 Atl. 584, 2 L. R. A. 798, a statute provided for the assessment of corporate bonds, at their nominal or face value, and the court, while recognizing that this was something different from the

real value, upheld the tax. In *Commonwealth* v. *Mortgage Trust Co.*, 227 Pa. 163, 76 Atl. 5, the statute provided that the actual value of each share of stock in a trust company should be determined by adding together the capital paid in, the surplus and the undivided profits, and dividing the result by the whole number of shares. It was held that this statute did not violate the provision of the state constitution that taxes should be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. The court said (227 Pa. 177, 76 Atl. 9):

> "The Legislature has the power to classify taxable subjects within reasonable limits, to fix the tax rate, and to provide a method by which to ascertain the taxable value of each particular class."

and again (227 Pa. 179, 76 Atl. 10):

> "We can see no reason why the Legislature may not definitely provide a method to determine how the taxable value shall be ascertained. * * * * * * It (the method of ascertaining taxable value) does not take into account selling value on the stock exchange or in the open market, and this fact is strongly urged against the act, but it was within the power of the Legislature either to include or exclude such selling value as an element to be considered in ascertaining taxable value. In this instance, selling value was not included, which in our view of the law is a legislative and not a judicial question."

In *Consolidated Coal Co.* v. *Miller*, 236 Ill. 149, 86 N. E. 205, 206, it is said:

> "The Legislature may decide the manner in which that property (capital stock of a corporation assessed to the corporation) may be valued and the manner in which the tax be levied."

To the same effect is *Faust* v. *Building Assn.*, 84 Md. 186, 35 Atl. 890, 892. The petitioners have cited a number of decisions as bearing upon this point, but they are clearly distinguishable from the case in hand, because they hold that where a statute requires the appraisal of capital stock to be at

its actual value in cash, it is erroneous for the officials charged with the ascertainment of that value arbitrarily to select only certain factors as to the value as the sole basis of the assessment; as, for example, under such a statute, to assume the value to be the amount of the capital required to produce earnings above current expenses at the rate of 6 per cent. See *Commonwealth* v. *Edgerton Coal Co.*, 14 Pa. Co. Ct. R. 449, affirmed 164 Pa. 284, 30 Atl. 125, 129; *Commonwealth* v. *Sharon Coal Co.*, 14 Pa. Co. Ct. R. 222, 3 Dauphin Co. Rep. 243, affirmed 164 Pa. 304, 30 Atl. 127; *Commonwealth* v. *Delaware, etc., Co.*, 14 Pa. Co. Ct. R. 440, 3 Dauphin Co. Rep. 249, affirmed 165 Pa. 44, 30 Atl. 522, 523; *Commonwealth* v. *Jamestown, etc., Co.*, 3 Dauphin Co. Rep. 255; *Commonwealth* v. *Manor Gas Coal Co.*, 188 Pa. 195, 41 Atl. 605.

*Willard* v. *Pike*, 59 Vt. 202, 9 Atl. 207, cited by the petitioners, is distinguishable. This case was decided under R. L. 288, which provided:

"In assessing stockholders for stock in a manufacturing corporation or company, the value of its real or personal estate represented by such stock and taxed in this State or elsewhere shall be deducted from the whole value of its stock, and the remaining value only shall be taxed; and in assessing for stock in all other corporations, the value of the real estate taxed in this State or elsewhere, shall be deducted from the whole value of its stock, and the remaining value only shall be taxed."

The value referred to in the statute was the value in money, and each item of taxable property was to be appraised by the listers at such sum as they would appraise it in payment of a just debt due from a solvent debtor, having regard to the current value of such property, and the sales thereof, other than auction sales, in the locality where it was situated. R. L. 317. This statute, amended by providing that personal taxable estate shall, unless otherwise provided, be appraised at its value in money on the first day of April, is now G. L. 766, and, as we have seen, the phrase "unless otherwise provided" exempts the property mentioned in section 5, No. 15, Acts 1927, from the operation of its general provisions.

So, too, *Richardson* v. *St. Albans*, 72 Vt. 1, 47 Atl. 100, also cited, is not in point. This case holds that where the capital of

a manufacturing corporation is exempted from taxation by the vote of a town under V. S. 365, the shares of stock in the hands of the stockholders are also exempt. The reason given is that the capital of the corporation and the shares of the stockholders are different forms of the same thing, and there is no value to the stock independent of the property which it represents.

But, by section 4 of the statute before us, this principle is recognized, because the property of manufacturing, mercantile, or trading corporations taxed to them in this State is deducted from the whole value of the stock, and the remaining value only taxed to the stockholder.

Other cases cited have to do with legislative assessment of items of tangible property at a fixed sum without regard to value.

The petitioners lay stress upon the Opinion of the Justices, 220 Mass. 613, 108 N. E. 570. This was an advisory opinion given to the Massachusetts State Senate, on its request, pursuant to a constitutional provision, concerning a proposed enactment which provided for the taxation of money on deposit or at interest, public and all other stocks, bonds, and evidences of indebtedness to be assessed at a certain number of times their annual net income at a uniform rate for each city and town, the multipliers to be applied to such income to be determined by appropriate public authorities, and to be subject to readjustment as occasion might require. The Justices considered that the proposed tax would not be proportional, since the special kinds of property enumerated were not to be assessed, as was other property, on market value, nor yet on income value, but on an arbitrary determination of income value. It was said that the proposed enactment—

> "does not rest the assessment upon any uniform method. It enables the Legislature or a public officer to readjust the multipliers according to a fluctuating judgment of what may be desirable even to the extent of accomplishing in practice great disproportions. The theory behind the bill would permit manifold classifications of diverse kinds of real as well as personal estate."

It may be pointed out that the statute before us does not permit a readjustment of the method of assessment according to a fluctuating judgment, but provides a formula which is fixed

and certain. But, while the opinion of the eminent members of the Supreme Judicial Court of Massachusetts is entitled to great respect, our views are not in harmony with those expressed by them in certain respects, and we shall make no attempt to reconcile the conflict.

In *Tappan* v. *Merchants' National Bank,* 19 Wall. 490, 504, 22 L. ed. 189, 195, it is said:

> "Absolute equality in taxation can never be attained. That system is the best which comes nearest to it. The same rules cannot be applied to the listing and valuation of all kinds of property."

In accord is *Travelers' Ins. Co.* v. *Connecticut,* 185 U. S. 364, 371, 372, 46.L. ed. 949, 954, 22 Sup. Ct. 673.

The constitutional requirement of proportional contributions ·for the support of the government was not intended to restrict the State to methods of taxation that operate equally upon all its inhabitants. *In re Hickok's Estate,* 78 Vt. 259, 265, 62 Atl. 724, 6 Ann. Cas. 578; *State* v. *Clement Nat. Bank,* 84 Vt. 167, 191, 78 Atl. 944, Ann. Cas. 1912D, 22. The limitation imposed by our Constitution does not forbid any classification of property for the purpose of taxation, or the adoption of any scheme of taxation, provided that they do not offend the federal Constitution, the equality clause in the one and the uniform clause in the other being in effect the same for such purposes. *Village of Hardwick* v. *Town of Wolcott,* 98 Vt. 343, 349, 129 Atl. 159; *State* v. *Caplan,* 100 Vt. 140, 152, 135 Atl. 705. The Legislature possesses a very wide, but not unlimited, discretion in this matter. It is only when the classification adopted conflicts with either or both federal and State Constitutions that the court can interfere. "All that is required to make valid any classification that the Legislature is pleased to adopt is that it shall be based upon a rational ground —some difference that bears a just relation to the purpose to be served." *State* v. *Caplan, supra,* 152, 153. In *Watson* v. *State Comptroller,* 254 U. S. 122, 124, 125, 65 L. ed. 170, 41 Sup. Ct. 42, 44, Mr. Justice Brandeis says:

> "But the power to classify for purposes of taxation is fully established. * * * * Any classification is permissible which has a reasonable relation to some permitted end of

governmental action. It is not necessary, as plaintiff in error seems to contend, that the basis of the classification must be deducible from the nature of things classified. * * * It is enough for instance, if the classification is reasonably found in 'the purposes and policy of taxation.' "

And thus Mr. Justice Stone, in *Stebbins* v. *Riley*, 268 U. S. 137, 143, 69 L. ed. 884, 45 Sup. Ct. 424, 426, 44 A. L. R. 1454:

"It (the classification) is not open to objection unless it precludes the assumption that the classification was made in the exercise of legislative judgment and discretion."

In *Commonwealth* v. *Delaware Div. Canal Co., supra* (123 Pa. 620, 16 Atl. 588, 589), it is said:

"The selection of the subjects, their classification, and the methods of collection are purely legislative matters. When the action of the Legislature with respect to these matters is not repugnant to the constitution, it would certainly be a case of the grossest inequality which would call for the intervention of the courts. * * * * Absolute equality is of course unobtainable; a mere approximate equality is all that can reasonably be expected. * * * Nor is classification necessarily based upon any essential difference in the nature, or indeed in the condition, of the various subjects. It may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods, so as to produce just and uniform results, or it may be based upon well-grounded considerations of public policy. Hence it is that some classes of corporations are taxed upon net earnings or income; others upon capital stock, the value thereof to be ascertained by their annual dividends, or, in a certain event upon the actual value of the shares; others upon their gross receipts; insurance companies upon the gross amount of their premiums; coal and mining companies at a specific sum for every ton of coal mined, etc. * * * Illustrations might be multiplied to show that classification does not depend upon differences in the physical natures or conditions of the subjects selected, but upon a variety of considerations."

So much for the principle involved. We turn now to the question whether the statute before us makes such an unreasonable, arbitrary classification as violates the proportional clause of our Constitution. It is true that section 1 of No. 15, Acts of 1927, provides for the taxation of "money, bonds, notes and other moneyed securities, shares of stock of a corporation or joint stock company or business trust and perpetual and redeemable leases, held by a person or corporation acting as trustee under order of court or held by a deed of trust," except shares of stock in trust companies and savings banks and trust companies organized under the laws of this State, as provided by section 2 (b) of No. 21 of the Acts of 1925; and section 2 of No. 15 of the Acts of 1927, provides for the taxation of "all other moneyed securities of whatsoever name or nature, including shares of stock of a corporation or joint stock company or business trust perpetual or redeemable leases," except shares in the banking institutions above mentioned. Of all the foregoing varieties of intangible property, as this kind of property is styled by statute (section 12, No. 21, Acts of 1925), corporate stock alone is singled out for assessment in the manner prescribed by section 5 of No. 15, Acts of 1927, although subject to the deductions specified in section 4 of the act. All the rest is left for appraisal at its value in money, and each item is to be appraised by the listers "at such sum as they would appraise the same in payment of a just debt due from a solvent debtor, having regard to the current value of such property and the sales thereof, other than auction sales, in the locality where it is situated," under G. L. 766.

But the segregation of one species of intangible property from others for purposes of assessment for taxation, is not without precedent. As we have seen, classification is not of necessity based upon any essential difference in the nature or condition of the various subjects. *Commonwealth* v. *Delaware Div. Canal Co.*, *supra*. Accordingly, in that case a classification of corporate bonds apart from other money obligations for purposes of taxation of the holders thereof was held not to be unreasonable. The same result, as to interest-bearing deposits in national banks, was reached in *State* v. *Clement National Bank*, 84 Vt. 167, 186, 78 Atl. 944, Ann. Cas. 1912D, 22; and as to shares of stock in trust companies, in *Commonwealth* v. *Mortgage Trust Co.*, 227 Pa. 163, 75 Atl. 5, 9.

In *Roberts & Shaeffer Co.* v. *Emmerson*, 271 U. S. 50, 70 L. ed. 827, 46 Sup. Ct. 375, 45 A. L. R. 1495, a statute of Illinois required an annual franchise tax upon corporations of five cents on each $100 of proportions of its capital stock authorized by its charter, represented by business transacted and property located in the State; and provided that: "In the event that the corporation has stock of no par value, its shares, for the purpose of fixing such fee, shall be considered to be of the par value of $100 per share." This tax was upheld over the specific and detailed objections that the selection of the authorized capital stock as a basis for the tax was arbitrary and had no tendency to produce equality, and resulted in imposing different rates of taxation upon corporations having the same issued capital stock, holding the same amount of property and doing the same amount of business, whenever they had different amounts of authorized capital stock; that the mere number of authorized no par value shares, regardless of their value or of the amount of money or property for which they might have been issued, was wholly arbitrary and not a reasonable basis for the tax; and that the provision assigning an arbitrary value of $100 per share to no par value stock for the purpose of computing the tax resulted in discrimination against corporations which issued shares of no par value, in favor of those which issued them at par value.

In *Bass, Ratcliff & Gretton, Ltd.* v. *State Tax Commission*, 266 U. S. 271, 69 L. ed. 282, 45 Sup. Ct. 82, an annual franchise tax upon foreign corporations based upon the net income for the preceding year, to be determined by the proportion which the aggregate value of specified classes of assets of the corporation within the State bears to the aggregate value of all such classes of assets wherever located, was held not to be inherently arbitrary in method.

We do not consider that the statute before us is palpably arbitrary or unreasonable, either as to the classification of corporate stock for purposes of taxation, or as to the method it prescribes for ascertaining the value of such stock. *State* v. *Shady,* 100 Vt. 193, 196, 136 Atl. 26.

The practical difficulties of appraising the value of this kind of property at its value in money and by the method prescribed in G. L. 766 are obvious, especially in view of the numerous and detailed factors entering into such value which appear

in the agreed statement of facts. Many corporate stocks are not listed; the sales of others are few and far between. The consideration of all the factors having to do with corporate management, risk, characteristics of product, manufactured and otherwise, and financial standing is so intricate and time consuming and so mandatory of expert examination that it is quite beyond the opportunities of a board of listers satisfactorily to discharge the task of appraisal upon this basis. This is especially the case when the vast number of corporations of different standards, financial and otherwise, is remembered. All owners of corporate stock are treated alike by the statute; there is no discrimination between them. We conclude, therefore, that the statute does not violate the proportional clause of our Constitution.

What we have said applies in great measure to the objection that the statute violates the Fourteenth Amendment of the federal Constitution. The equality clause therein and the proportional clause of our Constitution are of the same effect so far as the question of classification is concerned. *State* v. *Caplan*, 100 Vt. 140, 152, 153, 135 Atl. 705; *Village of Hardwick* v. *Town of Wolcott*, 98 Vt. 343, 349, 129 Atl. 159. In the latter case it is said:

> "While this provision of the federal Constitution imposes a limitation upon all the powers of the State which touch the individual or his property, it was not its purpose to prevent the State from adopting any proper and reasonable system of taxation. It does not prohibit the classification of property by the State for the purpose of taxation so long as the classification rests upon some ground of difference having a fair and reasonable relation to the subject of legislation, so that all persons similarly situated are treated alike."

It would serve no purpose to multiply authorities upon this point, but reference may be made to *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 33 L. ed. 892, 895, 10 Sup. Ct. 533, and to other cases cited on page 350 of the opinion (129 Atl. 160) in *Village of Hardwick* v. *Town of Wolcott; Stebbins* v. *Riley*, 268 U. S. 137, 142, 69 L. ed. 884, 45 Sup. Ct. 424, 426, 44 A. L. R. 1454; *Sioux City Bridge Co.* v. *Dakota Co.*, 260 U. S. 441, 67 L. ed. 340, 43 Sup. Ct. 190, 191, 28 A. L. R. 979; *Dane* v.

*Jackson*, 256 U. S. 589, 598, 599, 65 L. ed. 1107, 41 Sup. Ct. 566, 568; *Lacoste* v. *Department, etc., of State of Louisiana,* 263 U. S. 545, 552, 68 L. ed. 437, 44 Sup. Ct. 186, 188; *Puget Sound Power & Light Co.* v. *King County*, 264 U. S. 22, 28, 68 L. ed. 541, 44 Sup. Ct. 261, 263; *State* v. *Clement National Bank*, 84 Vt. 167, 184, 185, 78 Atl. 944, Ann. Cas. 1912D, 22; *Clement National Bank* v. *State of Vermont*, 231 U. S. 120, 134, 135, 58 L. ed. 147, 155, 34 Sup. Ct. 31; *Tappan* v. *Merchants' Nat. Bank*, 19 Wall. 490, 504, 22 L. ed. 189, 195.

We have already held that section 5, No. 15, Acts ·of 1927, establishes a reasonable classification and is not discriminatory, and so is valid under the proportional clause of our Constitution. We do not consider that it denies the equal protection of the law, under the Fourteenth Amendment.

It is further contended that the act is a denial of due process of law. A State tax law will not be held to conflict with the Fourteenth Amendment, there being no conflict with federal power involved, unless it "proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received as to amount to the arbitrary taking of property without compensation—'to spoliation under the guise of exerting the power of taxing.' " *Dane* v. *Jackson*, 256 U. S. 589, 599, 65 L. ed. 1107, 41 Sup. Ct. 566, 568.

Where a statute itself makes an assessment of property for purposes of taxation, the tax being recoverable by suit, it is not required, in order to constitute due process of law, that any other notice than that contained in the statute be given the taxpayer. *Clement National Bank* v. *State of Vermont*, 231 U. S. 120, 143, 58 L. ed. 147, 158, 34 Sup. Ct. 31; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 33 L. ed. 892, 895, 10 Sup. Ct. 533. "But where the Legislature * * * commits to some subordinate body the duty of * * * making the assessment, * * * due process of law requires that, at some stage of the proceedings, before the tax becomes irrevocably fixed, the taxpayer must have opportunity to be heard, and notice, either personal, by publication, or by a law fixing the time· and place of hearing." *Londoner* v. *Denver*, 210 U. S. 373, 385, 52 L. ed. 1103, 1112, 28 Sup. Ct. 708, 714; *Turner* v. *Wade*, 254, U. S. 64, 68, 65 L. ed. 134, 41 Sup. Ct. 27, 28. In *McGregor* v. *Hogan*, 263 U. S. 234, 237, 68 L. ed. 282, 44 Sup. Ct. 50, 51, it is said:

"It is not essential to due process of law that the taxpayer be given notice and hearing before the value of his property is originally assessed: it being sufficient if he is granted the right to be heard on the assessment before the valuation is finally determined. * * * The requirement of due process is that after such notice as may be appropriate the taxpayer have opportunity to be heard as to the amount of the tax by giving him the right to appear for that purpose at some stage of the proceedings before the tax becomes irrevocably fixed."

■ All this has been accorded to the petitioners in the instant case. As we have seen, the statute did not of itself make the assessment. This was done by the listers in the manner prescribed therein. No question is made of any lack of notice of the proceedings before the listers. All avenues of appeal, as provided by the law, have been open to petitioners, and full advantage of them has been taken. We hold that there has been no denial of due process of law. See *State* v. *Clement National Bank, supra,* 84 Vt. at p. 189 (78 Atl. 944).

■ Nor do we perceive that the statute violates the principle of separation of Legislature and Judiciary, as provided in Chapter II, section 5, of our Constitution. As we have seen, the act makes a sufficient provision for a lawful assessment. There is no usurpation of judicial power.

■ The petitioners insist that the act is objectionable because of its effect in operation, and this question will now be considered. A law not objectionable on its face may be adjudged unconstitutional because of its effect in operation. *State* v. *Clement National Bank, supra,* 84 Vt. at p. 188 (78 Atl. 944). So, too, although lawful upon its face and apparently fair in its terms, yet if it is enforced in such a manner as to work a discrimination against a part of the community, for no lawful reason, such exercise of power will be held to be invalid. *Dobbins* v. *Los Angeles,* 195 U. S. 223, 240, 49 L. ed. 169, 177, 25 Sup. Ct. 18; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 220, 227, 6 Sup. Ct. 1064. The intent of the Legislature is in some cases to be considered (*State* v. *Clement National Bank, supra*), as is also the question whether the public authority administers the law "with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in

similar circumstances, material to their rights." *Yick Wo* v. *Hopkins, supra.*

The point must be decided with reference to the situation of these petitioners, because one who challenges the validity of taxation, on the ground that it violates the equal protection clause of the Fourteenth Amendment cannot rely upon theoretical irregularities, or such as do not affect him, but must show that he is himself unfavorably affected. *Roberts & Shaeffer Co.* v. *Emmerson,* 271 U. S. 50, 54, 55, 70 L. ed. 827, 46 Sup. Ct. 375, 376, 45 A. L. R. 1495, and cases cited; *State* v. *Caplan,* 100 Vt. 140, 154, 135 Atl. 705.

To begin with, no question is made, or can be made upon the record presented, as to any injurious intent on the part of the Legislature in passing the act, or as to any unequal or discriminatory administration of the law by those charged with the duty of such administration. The only injurious operation claimed by the petitioners is that the law itself is unequal in its working within the class of taxpayers to which it applies.

It is said that the use of the single factor of dividends paid in one year produces value sometimes greater and sometimes less than the real value shown by an approved method of valuation, by which phrase is meant a valuation which takes into account all the factors enumerated in the agreed statement of facts. But this argument assumes that the real value, as so ascertained, is the only constitutional basis for taxation, and this, as we have seen, cannot be regarded to be the case. Once we recognize the principle that the method of valuation of property for purposes of taxation is, in the absence of constitutional requirements, a matter for the Legislature to decide, all objection based upon a difference between the value obtained by the prescribed method, and that which would be reached by another, and perhaps more ideal method, is obviated. We have held that the act here in question was within the legislative competence, and, further, that it is not arbitrary or unreasonable in method. The fact that the values reached thereunder do not coincide with those shown by the market reports, or discovered by a consideration of other factors than the amount of dividends paid, does not invalidate the statute. All stocks are assessed by the same formula; all the owners of such stocks are taxed according to the value thus determined. Since the inequalities in values complained of result from a classification which is

founded upon real differences and is not unreasonable, any resulting discrimination is not arbitrary, or prohibited by the Fourteenth Amendment. *Roberts & Schaeffer Co.* v. *Emmerson, supra,* 271 U. S. 50, 46 Sup. Ct. 377. It is said in *In re Passaic Valley Water Comm.* (N. J. Sup.), 142 Atl. 905, 906:

> "If in the application of the statute, it may seemingly work an injustice, we cannot refuse to apply or enforce a constitutional statute for that reason, because, as was said by Chief Justice Beasley, in the case of *Douglass* v. *Board of Chosen Freeholders,* 38 N. J. Law, 216, where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place."

Our attention is especially called to a situation affecting certain, but not all, of the petitioners, who own stock in the Majestic Theatre, Inc., and the Capital Theatre Company. Both of these are domestic corporations. The Queen City Realty Corporation and the Capital Realty Company are foreign corporations and own tangible property within this State, upon which they pay taxes. The stockholders of all of the four above mentioned corporations are the same. The Majestic Theatre Company and the Capital Theatre Company operate the property owned by the Queen City Realty Company, and the Capital Realty Company, respectively. Since the two last-named corporations pay taxes upon all their tangible property in this State, their stock, which pays dividends, is, by virtue of G. L. 712, as amended by section 4, No. 15, Acts of 1927, and by a ruling of the commissioner of taxes construing it, of which no complaint is made by the petitioners, exempt from taxation. But the stock of the Majestic Theatre, Inc., and the Capital Theatre Company, pays dividends, and is subject to the tax.

It is urged that the property represented by this stock had already been taxed, when the two realty companies paid taxes upon their tangible assets. But, to take the Majestic Theatre, Inc., as an example, it will be observed that the property represented by the stock of that corporation is not the property of the Queen City Realty Company, but it is the operating rights owned by the theatre corporation. We are not informed in what the relation between the two corporations consists, but

presumably it is defined by an agreement having the legal effect of a lease. Assuming this to be so, the leasehold estate is a distinct property, because there may be several estates or interests, each property, in the same tract of land. There is no double taxation in taxing them separately to their respective owners. *Harvey Coal, etc., Co.* v. *Dillon,* 59 W. Va. 605, 53 S. E. 928, 6 L. R. A. (N. S.) 628, 643.

On the other hand, if the theatre company is operating the property under a contract of agency, the result is the same. In this situation, the theatre company has no interest in the property, but its stock represents its rights under its contract.

These rights, whether arising under a lease or by contract of agency, are not taxed, and consequently the stock was properly assessed. Thus, the case does not come within the rule laid down in *Willard* v. *Pike,* 59 Vt. 202, 223, 9 Atl. 907; *Waite* v. *Hyde Park Lumber Co.,* 65 Vt. 103, 107, 25 Atl. 1089; and *Richardson* v. *St. Albans,* 72 Vt. 1, 3, 47 Atl. 100, that, since the capital of a corporation and the shares of its stock are different forms of the same thing, the taxation, or exemption from taxation, of all its property so represented by the stock, carried with it an exemption of the stock, under the provisions of the statute, then in force, *i.e.,* R. L. 288, and V. S. 383, which are similar to G. L. 712, as amended.

What we have said in the foregoing opinion disposes of all questions raised in this case.

*Petitions dismissed with costs.*