JOHN J. TRYBULSKI ET AL. *v.* BELLOWS FALLS
HYDRO-ELECTRIC CORPORATION.

February Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed May 13, 1941.

2

3

*Barber & Barber* for petitioners.

*Fenton, Wing & Morse (Leonard F. Wing* and *John D. Carbine)* for the petitionee.

MOULTON, C. J. This is an appeal from an order of the public service commission dismissing for lack of jurisdiction a petition brought to assess damages for injuries to the properties of the petitioners claimed to have been caused by the maintenance and operation of the petitionee's dam across the Connecticut

River between Bellows Falls, Vermont, and North Walpole, New Hampshire. The petitionee is engaged in the manufacture and sale of electric current. The premises of the petitioners lie in this State, abutting on the river, at some distance downstream from the dam. It is alleged that, in a manner and for reasons not necessary to recount in detail, the petitionee has operated its dam so as to cause certain fluctuations in the flow of water which have resulted in the erosion of the lands owned by the petitioners, and that in March, 1936, after the formation of an ice jam above the dam, and a period of warm weather, rain and fog, the flashboards and gates of the dam were removed so that a large volume of water and ice came down the river, overflowing and washing away the petitioners' lands, depositing thereon a great amount of sand and debris, and damaging their farming tools and machinery.

The petitionee was incorporated by an Act of the Legislature passed October 25, 1792, under the name of "The Company for Rendering the Connecticut river navigable by Bellows Falls," and was granted "the exclusive privilege of erecting and continuing locks on or by Bellows Falls, on Connecticut river, within the State of Vermont," and the charter provided "That if it should be found necessary to fully effect the intention of this act, to erect a dam on Connecticut River, and thereby flow, or otherways injure the property of any of the good citizens of this State, such person or persons so injured shall, upon application to the county court for the county of Windham, be entitled to receive from the company aforesaid, such compensation as the county court shall adjudge just and equitable, for the injury which such person or persons has sustained, or probably may in future sustain, by flowing the said land or in any other way whatsoever, and a record being made thereof by the clerk of said court shall be a complete bar to any future application for any compensation for any injury done to the same property, whether real or personal; and any action for damage sustained by the dam aforesaid, shall be commenced in the mode prescribed by this act, and in no other, unless the company shall have failed to pay the sum or sums assessed by the court aforesaid, any law, usage or custom to the contrary notwithstanding." Laws of Vermont, 1797, Appendix, P. 81-84. The charter was amended by No. 135 of the Acts of 1859, by changing the corporate name

to the Bellows Falls Canal Company, and providing that "All the rights and privileges heretofore granted such company are hereby extended to them for the purpose of manufacturing, selling or renting of water power, and the transacting of such other business as may be incident thereto." A further amendment was effected by No. 365 of the Acts of 1912, which after reciting (Sec. 1) that the company had ceased to furnish navigation service, provided (Sec. 9) that "Said Bellows Falls Canal Company shall at all times be subject to the general laws of this state from time to time in effect and applicable to water power corporations, and shall be subject to all duties, limitations and restrictions imposed thereby; and if at any time said Bellows Falls Canal Company shall engage in the business of manufacturing, distributing and selling to the public electricity for light, heat or power purposes, it shall be under and subject to all general laws of this state then and from time to time in effect applicable thereto, and shall be subject to the supervision and authority of the public service commission in the manner and to the extent provided in No. 116 of the Acts of 1908 and any acts amendatory thereof or supplemental thereto." At some time subsequent to the passage of this act, the exact date not appearing in the record, the name of the petitionee was changed to the Bellows Falls Hydro-Electric Corporation.

The public service commission has "the powers of a court of record, both at law and in equity, in the determination and adjudication of all matters over which it is given jurisdiction. It may render judgments, make orders and decrees, and enforce the same by any suitable process issuable by courts of law and equity in this State," (P. L. 6060), subject to the right to an appeal to the Supreme Court. P. L. 6063.

By P. L. 6085 the commission is given "general supervision of all companies engaged in the manufacture, distribution, or sale of gas or electricity directly to the public or to be ultimately used by the public for lighting, heating or power * * * and of all companies engaged in the construction and maintenance of storage reservoirs * * * for the purpose of power to be developed at such reservoir * * * so far as may be necessary to enable it to perform the duties and exercise the powers conferred upon it by this chapter." And by P. L. 6091, "The commission shall have jurisdiction, on due notice, to hear, determine, render judg-

ment and make orders and decrees in all matters provided for in the charter or articles of any corporation owning or operating any plant, line or property subject to supervision under this chapter * * *'' P. L. 6085 and 6091 were originally enacted as Sec. 3 and 9, respectively, of No. 116 of the Acts of 1908, to which reference is made in the amendment to the petitionee's charter effected by No. 365 of the Acts of 1912.

The jurisdiction of the public service commission over this proceeding is claimed by the petitioners to be conferred by the foregoing statutes—(1) The original charter of 1792, providing for the assessment of compensation for injuries caused by flowage or otherwise by the Windham County Court; (2) The amendment of 1912, making the petitionee subject to the supervision and authority of the public service commission; and (3) P. L. 6091, conferring jurisdiction upon the commission to hear, determine and render judgment and make orders and decrees in all matters provided for in the charters of any corporation owning and operating any property subject to its supervision. Thus, it is argued, the authority of the Windham County Court to adjudge just and equitable compensation has been transferred to the commission, and that the language of the charter is sufficiently comprehensive to include injuries to property below as well as above the dam.

On the other hand, it is the position of the petitionee that the assessment of damages for previously committed acts is a judicial function, and, under the constitutional provision for the separation of powers, cannot be exercised by the commission.

██ The Constitution of this State (Chap. II, Sec. 5) provides that ''The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others.'' This provision, which is a characteristic feature of American constitutional government (See Pillsbury, ''Administrative Tribunals,'' 36 Harv. Law Rev. 405) does not mean an absolute separation of functions. *Sabre et al.* v. *Rutland R. R. Co. et al.*, 86 Vt. 347, 362, 85 Atl. 693, Ann. Cas. 1915C 1269. Of necessity there must be a certain amount of overlapping or blending of the powers exercised by the different departments. To borrow the words of a distinguished authority: ''The constitution does not require a rigid analytical classification in which every conceivable activity

of government is assigned once for all exclusively to one of the three departments. There are many powers which are of doubtful classification both analytically and historically''—Roscoe Pound, ''The Place of a Judiciary in a Democratic Polity.'' 27 Am. Bar Ass'n Journal 133, 136. While this was written with regard to the Federal Constitution, it is equally applicable to our own. But although one department of government may be authorized to exercise certain powers which may in some manner pertain to another, these powers must be such as are incidental to the discharge of the functions of the department exercising them. *Re Opinion of Justices,* 87 N. H. 492, 179 Atl. 344, 357, 110 A. L. R. 819, 822, 823. Beyond this the powers of one department may not constitutionally be conferred upon another. *Denver* v. *Lynch,* 92 Colo. 102, 18 Pac. 2d. 907, 86 A. L. R. 907, 910; *State ex rel. Williams* v. *Whitman,* 116 Fla. 196, 150 So. 136, 156 So. 705, 95 A. L. R. 1416, 1421; *State ex rel. Standard Oil Co.* v. *Blaisdell,* 22 N. D. 86, 132 N. W. 769, 773, Ann. Cas. 1913E 1089.

 The public service commission is an administrative body, clothed in some respects with *quasi* judicial functions, authorized in the exercise of the police power to make rules and regulations required by the public safety and convenience and to determine facts upon which existing laws shall operate, and having, in a sense, auxiliary or subordinate legislative powers which have been delegated to it by the General Assembly. *Sabre et al.* v. *Rutland R. R. Co. et al.,* 86 Vt. 347, 361, 362, 85 Atl. 693, Ann. Cas. 1915C 1269; *Bessette* v. *Goddard,* 87 Vt. 77, 81, 88 Atl. 1. It is a body exercising special and statutory powers not according to the course of the common law, as to which nothing will be presumed in favor of its jurisdiction. *Bessette* v. *Goddard, supra,* page 82; *Sayers* v. *Montpelier and Wells River R. R.,* 90 Vt. 201, 209, 97 Atl. 660. It has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted, and it is merely an administrative board created by the State for carrying into effect the will of the State as expressed by its legislation. *In re James,* 97 Vt. 362, 367, 368, 123 Atl. 385; *Trustees of Newport Center et al.* v. *Niles et al.,* 102 Vt. 121, 123, 146 Atl. 71.

8

The commission, therefore, is to be classed as an agency of the Legislature, and is not a court in the strict sense. *Bessette* v. *Goddard, supra;* and see *Hamilton* v. *Caribou, etc., Co.,* 121 Me. 422, 117 Atl. 582, 583. The powers of a court of record, given to it by P. L. 6060, specifically relate to those matters within its jurisdiction, and such jurisdiction clearly appears from the entire statute (Chap. 250, P. L.) to be of a supervisory nature, to be exercised in the interest and for the welfare of the general public. The "jurisdiction * * * in all matters provided for in the charter or articles of any corporation owning or operating any plant or property subject to supervision under this chapter," conferred by P. L. 6091 does not indicate a different character, and is there given for the purpose of enabling the commission to carry out the requirements of "general supervision" provided for in P. L. 6085. *In re James,* 97 Vt. 362, 368, 369, 123 Atl. 385.

It is often difficult to distinguish between functions that are judicial and those that are not. Executive or administrative acts frequently involve the exercise of judgment and discretion, qualities which are deemed to characterize a judicial act. But it is the quality of the act and not the official classification of the actor that determines this question, and an official act requiring the exercise of discretion and judgment may be administrative or judicial according to the nature of the subject matter. *Davidson* v. *Whitehill et al.,* 87 Vt. 499, 505, 89 Atl. 1081; see, also, *Solvuca* v. *Ryan and Reilly Co.,* 131 Md. 265, 110 Atl. 710, 715; 11 Am. Jr., tit. "Constitutional Law," para. 204. The *quasi* judicial power with which the public service commission is clothed has been defined as "the power to perform acts administrative in character, but requiring incidentally the trial and determination of questions of law and fact. The test of administrative or judicial character is whether the act in question is reasonably necessary or incidental to the carrying out of an executive or judicial function." Pillsbury, "Administrative Tribunals." 36 Harv. Law Rev. 405, 420. And it may be said that where the duty is primarily to decide a question of private right, based upon a claim for reparation for injuries suffered in the past, involving a determination of the facts or the construction and application of existing laws, the function

is judicial, and constitutionally is to be performed by the Courts. *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 226, 29 Sup. Ct. 67, 53 L. Ed. 150; *State ex rel. Standard Oil Co.* v. *Blaisdell*, 22 N. D. 86, 132 N. W. 769, 774, Ann. Cas. 1913E 1089; *C and N. W. R. R. Co.* v. *R. R. Comm'n.*, 162 Wis. 91, 155 N. W. 941, 942; *Missouri Valley Realty Co.* v. *Cupples Station, etc., Co.,*— Mo. Supp.—, 199 S. W. 151, 153; Pillsbury, *supra*, 36 Harv. Law Rev. at p. 422. In accordance with this principle we have held in *Roben* v. *Ryegate Light and Power Co.*, 91 Vt. 402, 407, 100 Atl. 768, that the jurisdiction conferred upon the public service commission over public service corporations does not deprive the courts of jurisdiction of actions of contract against such corporations, to say nothing of actions in general; and in *City of Barre* v. *Barre and Montpelier Power and Traction Co.*, 88 Vt. 304, 313, 92 Atl. 237, that it was not within the jurisdiction of the commission to pass upon the validity of the defendant's franchise. Among other decisions to the same effect may be noted: *People* v. *Peoria, etc., Ry. Co.*, 273 Ill. 440, 113 N. E. 68, 71; *People* v. *R. R. Comm'rs*, 158 N. Y. 421, 53 N. E. 163, 166; *Public Service Elec. Co.* v. *Bd. of Pub. Utility Comm'rs*, 88 N. J. L. 603, 96 Atl. 1013, 1015; *Town of Brant* v. *Iroquois Nat. Gas Co.*, (N. Y.), P. U. R. 1917A 83, 87; *Re City of Durango*, (Col.), P. U. R. 1921A 316, 326; *Re City of Pocatello*, (Idaho), P. U. R. 1916D 176, 185; *Patterson* v. *Philadelphia, etc., Gas and Elec. Co.* (Pa.), P. U. R. 1926D 1, 2 and, for the same reason, public utility boards or commissions have declined to pass upon claims for damages alleged to have been caused by negligence or breach of contractual obligations on the part of corporations subject to their supervision and control. See *Colonial Mineral Springs Co.* v. *Martinsville*, (Ind.), P. U. R. 1920E 526, 531; *Re Wildwood Gas Co.*, (N. J.), P. U. R. 1916B 816, 818; *Rodgers* v. *N. W. Pac. R. R. Co.*, P. U. R. 1921A 609, 610; *In re San Francisco-Oakland T. R. Co.*, (Cal.), P. U. R. 1915F 855, 857; *Taylor* v. *Glenwood Springs*, (Col.), P. U. R. 1921E 526, 535; *Ambruster* v. *N. J. Bell Tel. Co.*, (N. J.), 1 P. U. R. (N. S.) 169, 171 and cas. cit. in note, page 172; *Titze* v. *Wisconsin Hydro. Elec. Co.*, (Wis.), 11 P. U. R. (N. S.) 532; *Blume and Co.* v. *Wells Fargo and Co.*, 15 I. C. C. 53, 54; *Joynes* v. *Penn. R. R. Co.*, 17 I. C. C. 361, 362 ff; *Heck and Petree* v. *E. Tenn.*,

10

*etc., Ry. Co.,* 1 I. C. C. 495, 502; *Councill* v. *Western and Atl. R. R. Co.,* 1 I. C. C. 339, 345.

 The relief sought by the petition in this case involves not only the finding of past and future damages, but a construction of the charter of 1792 to determine, among other matters, whether, as the petitioners claim, that instrument makes the petitionee liable as an insurer, or whether the issue of negligence is open for adjudication, as well as whether the provisions of the charter apply to the petitioners; questions upon which we express no opinion. This is a purely judicial function. It is not incidental to the general supervisory power of the commission. In construing P. L. 6091 we will assume that the Legislature did not overlook the provisions of the Constitution (*In re Allen,* 82 Vt. 365, 377, 73 Atl. 1078, 26 L. R. A. (N. S.) 232), and did not intend to transfer the jurisdiction of the Windham County Court in this respect to the public service commission. See *Public Service Electric Co.* v. *Board of Public Utilities Comm'rs.,* 88 N. J. 603, 96 Atl. 1013, 1015. To give the statute the meaning claimed by the petitioners would be to render it unconstitutional, and this result we must avoid if it is fairly and reasonably possible to do so. *State* v. *Clement Nat'l. Bank,* 84 Vt. 167, 200, 78 Atl. 944; *United States* v. *La Franca,* 282 U. S. 568, 574, 51 Sup. Ct. 278, 281, 75 L. Ed. 551. We must indulge every presumption and resolve every doubt in favor of its validity. *Graves* v. *Minnesota,* 272 U. S. 425, 428, 47 Sup. Ct. 122, 123, 71 L. Ed. 331; *Corporation Commission* v. *Lowe,* 281 U. S. 431, 438, 50 Sup. Ct. 397, 399, 74 L. Ed. 945; *Clark et al.* v. *City of Burlington et al.,* 101 Vt. 391, 397, 143 Atl. 677.

The result is

*The order of the public service commission dismissing the petition for lack of jurisdiction was without error and it is affirmed.*